IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JILLIAN MCADORY,

        Plaintiff,

v.

M.N.S. & ASSOCIATES, and DNF
ASSOCIATES, LLC, foreign limited
liability companies,

        Defendants.

No. 3:17-cv-00777-HZ

OPINION & ORDER

Kelly D. Jones
KELLY D. JONES, ATTORNEY AT LAW
89 S.E. Morrison Street, Suite 255
Portland, Oregon 97214

Kevin A. Mehrens
LAW OFFICE OF KEVIN A. MEHRENS
319 S.W. Washington Street, Suite 614
Portland, Oregon 97204

        Attorneys for Plaintiff

/ / /

1 - OPINION & ORDER

Jordan M. New
THE LAW OFFICE OF JORDAN MICHAEL NEW
1001 S.W. Fifth Avenue, Suite 1100 #483
Portland, Oregon 97204

Brendan H. Little
LIPPES MATHIAS WEXLER FRIEDMAN LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202

      Attorneys for Defendant DNF Associates, LLC

HERNANDEZ, District Judge:

Plaintiff Jillian McAdory brings this Fair Debt Collection Practices Act (FDCPA) action against Defendants M.N.S. & Associates ("M.N.S.") and DNF Associates, LLC ("DNF"), contending that M.N.S's conduct in attempting to collect a consumer debt from Plaintiff violated various provisions of the FDCPA, 15 U.S.C. §§ 1692-1692p, and that DNF is vicariously and jointly liable for M.N.S's actions. In a November 3, 2017 Opinion & Order, I granted DNF's motion to dismiss after concluding that as a matter of law, DNF was not a "debt collector" as defined by the FDCPA. *McAdory v. M.N.S. & Assocs.*, No. 3:17-cv-00777-HZ, 2017 WL 5071263 (D. Or. Nov. 3, 2017), ECF 27. In a March 11, 2018 Opinion, I denied Plaintiff's motion to amend which I construed as a motion for reconsideration of the November 3, 2017 Opinion. 2018 WL 1256482 (D. Or. Mar. 11, 2018), ECF 34. On May 31, 2018, Plaintiff obtained an Order of Default against M.N.S. ECF 39.

Plaintiff now moves for entry of judgment as to DNF under Federal Rule of Civil Procedure 54(b). I grant the motion.

## STANDARDS

In cases with multiple claims or parties, the court "may direct entry of a final judgment as

to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for dely." Fed. R. Civ. P. 54(b). "[I]n the interest of judicial economy, Rule 54(b) should be used sparingly." *Gausvik v. Perez*, 392 F.3d 1006, 1009 n.2 (9th Cir. 2004) (further stating that Rule 54(b) "was not meant to displace the 'historical federal policy against piecemeal appeals.'") (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)). However, as the Supreme Court recently explained, Rule 54(b) was adopted "specifically to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case." *Gelboim v. Bank of Am. Corp.*, ___ U.S. ___, 135 S. Ct. 897, 902 (2015) (internal quotation marks and brackets omitted). Thus, the Rule "aimed to augment, not diminish, appeal opportunity." *Id.* at 902-03.

In determining whether to enter a Rule 54(b) judgment, the district court first analyzes whether it has rendered a "final judgment," meaning a judgment that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (internal quotation marks omitted); *Wood v. GCC Bend, LLC*, 423 F.3d 873, 878 (9th Cir. 2005). Where the case involves multiple parties rather than multiple claims, "'party' has the same effect as 'claim.'" *Birkes v. Tillamook Cty.*, No. 3:09-cv-1084-AC, 2012 WL 2178964, at *1 (D. Or. June 13, 2012).

Next, the court must determine "whether there is any just reason for delay." *Wood*, 422 F.3d at 878. The district court has discretion to "determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright*, 446 U.S. at 8. This discretion "is to be exercised in the interest of sound judicial administration." *Id.* (internal quotation marks omitted). Factors relevant to this determination include whether the claims

finally adjudicated are "separable from the others remaining to be adjudicated," and whether "the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* at 8; *see also Wood*, 422 F.3d at 878 n.2 (listing relevant factors as: (1) whether certification would result in unnecessary appellate review; (2) whether the claims finally adjudicated were separate, distinct, and independent of any other claims; (3) whether review of the adjudicated claims would be mooted by any future developments in the case; (4) whether an appellate court would have to decide the same issues more than once even if there were subsequent appeals; and (5) whether delay in payment of the judgment would inflict severe financial harm). Finally, the district court should consider the equities involved. *Puri v. Khalsa*, No. 3:10-cv-01532-MO, 2017 WL 6513055, at *1 (D. Or. Dec. 20, 2017).

## DISCUSSION

The Amended Complaint raises a single FDCPA claim brought against both Defendants. Am. Compl. ¶¶ 21-22. The allegations, however, show that the underlying conduct alleged to support the actual FDCPA violation is attributable to M.N.S. *Id.* ¶¶ 8-22. DNF, the purchaser of the debt, allegedly contracted with M.N.S. to collect it. Thus, Plaintiff seeks damages from M.N.S. for its conduct and from DNF under a vicarious liability theory because DNF itself did not directly interact with Plaintiff. The absence of direct debt-collection conduct by DNF was the basis for its motion to dismiss. As explained in my two prior opinions, I agreed with DNF that as a debt purchaser which took no affirmative collection activity toward Plaintiff itself, DNF was not a "debt collector" under the FDCPA. Furthermore, as I made clear in the second opinion, I dismissed DNF with prejudice.

I agree with Plaintiff that the March 11, 2018 Opinion & Order denying Plaintiff's motion for leave to amend was a final judgment. That Order re-affirmed that the only claim against DNF was dismissed and it made clear that DNF's dismissal was with prejudice. Thus, the Order was an ultimate disposition of an individual party entered in the course of a multiple-party action.

Plaintiff argues that considerations of judicial administrative interests support entry of a Rule 54(b) judgment as to DNF. She contends that the question for immediate appeal, whether DNF is a debt collector under the FDCPA, is distinct and severable from any other remaining issues to be decided in the case. She notes that even if M.N.S. had not been defaulted, there is no dispute that M.N.S. is a debt collector under both prongs of 15 U.S.C. § 1692a(6) because M.N.S. was collecting a debt from Plaintiff that was owed to DNF. Thus, she contends that the issue of either Defendant's status as a debt collector under the FDCPA will not arise again in the context of this litigation in this Court. Additionally, even if the issue arose as to M.N.S., it would be determined based on facts unique to M.N.S's conduct as distinct from those at issue in assessing DNF's status.

Moreover, she contends that failure to certify DNF's dismissal as immediately appealable under Rule 54(b) creates the risk of duplicative litigation. Without DNF in the case due to its dismissal, Plaintiff will proceed with her claim against M.N.S. and liability and damages against M.N.S. only would be determined.[1] If Plaintiff prevails on appeal as to her claim against DNF, then DNF could re-litigate the liability and damages issues upon remand to this Court. Thus, she

---

[1] Given that M.N.S. has been defaulted, the factual allegations in the Complaint are taken as true, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("the general rule is that well-pled allegations in the complaint regarding liability are deemed true."), and the Court would most likely conduct a prima facie hearing to determine the amount of damages. Fed. R. Civ. P. 55(b).

5 - OPINION & ORDER

argues, without a Rule 54(b) judgment as to her claim against DNF, multiple trials on the same issues could occur, creating the risk of duplicative litigation as well as inconsistent judgments. *See U.S. Fidelity & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1140 (9th Cir. 2011) (finding the avoidance of inconsistent verdicts a factor supporting entry of partial judgment under Rule 54(b)).

DNF, relying on *Birkes*, responds that the claims are not separable and divisible because the factual allegations supporting the claims against DNF and M.N.S. are the same. In *Birkes*, Judge Acosta considered the defendants' motion for entry of a Rule 54(b) judgment in a case where summary judgment was granted to the defendants with regard to the unlawful seizure and conversion claims of plaintiff Preston but the claims of co-plaintiff Birkes were unadjudicated. 2012 WL 2178964 at *1. The facts involved an individual defendant's firing two shots - one at Birkes and the other at Preston's dog, killing the dog. *Id.* at *2. Judge Acosta noted that the two plaintiffs' claims were "intertwined within" the "same factual scenario." *Id.* He concluded that just because the shots had different "victims" was insufficient to show "factual separability." *Id.* Additionally, while one claim involved a person while the other a dog, because they arose out of the same statutory language, 42 U.S.C. § 1983, and both alleged unlawful seizure, they were closely legally related. *Id.* Thus, he rejected the defendants' argument that the claims were legally and factually distinct.

DNF argues that like the claims in *Birkes*, the claim against it and the claim against M.N.S. stem from the same factual core and are legally related. Given that DNF's liability is alleged to be vicarious, the only way DNF is liable in this case, even if it were a debt collector, is if Plaintiff first proves that M.N.S.'s conduct violated the FDCPA. Under these circumstances,

DNF argues that a Rule 54(b) judgment against it is inappropriate.

Ninth Circuit cases make clear that "claims certified for appeal [under Rule 54(b)] do not need to be separate and independent from the remaining claims, so long as resolving the claims would streamline the ensuing litigation." *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (internal quotation marks omitted); *see also Jewel v. Nat'l Security Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (noting that the "inquiry" of "whether the certified order is sufficiently divisible from the other claims" "does not require the issues raised on appeal to be completely distinct from the rest of the action 'so long as resolving the claims would streamline the ensuing litigation.'") (quoting *Noel*, 568 F.3d at 747). In *Wood*, the Ninth Circuit reversed the district court's grant of a Rule 54(b) judgment on an issue of constructive discharge because the plaintiff's "legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts." 422 F.3d at 880. But, the court was careful to explain that it "[did] not mean to suggest that claims with overlapping facts are foreclosed from being separate for purposes of Rule 54(b)." *Id.* The court remarked that "[b]oth the Supreme Court and our court have upheld certification on one or more claims despite the presence of facts that overlap remaining claims[.]" *Id.* (noting cases involving counterclaims that arise out of the same transaction or occurrence as the certified claim or complex cases with an important controlling or legal issue that cuts across a number of claims).

While this case does not have a counterclaim and cannot be fairly described as "complex," the claim against DNF involves a distinct legal issue involving a debt purchaser's status as a debt collector. Resolution of this legal issue rests on facts different from those asserted to support M.N.S.'s debt collector status. Thus, while there is no liability against either

Defendant until M.N.S.'s conduct is adjudged to have violated the FDCPA, the legal issue of whether DNF is a debt collector is distinct and relies on separate, independent facts. Because the claim against DNF involves a discrete legal issue based on different facts, that the claim overlaps with the claim against M.N.S. is not determinative of whether it is separate and independent. Moreover, DNF fails to acknowledge Plaintiff's argument that proceeding against M.N.S. alone, absent DNF, creates the possibility of duplicative litigation and inconsistent verdicts as explained above.

The issue of DNF's debt collector status is sufficiently separate, distinct, and independent of the claim against M.N.S. to support Rule 54(b) judgment as to DNF. Because this issue is not implicated in the claim against M.N.S., an appellate court will not have to decide this issue again in any subsequent appeal and there is no unnecessary appellate review created by entry of the requested Rule 54(b) judgment. As Plaintiff notes, there is unlikely to be any delay in payment of any judgment as to M.N.S. as it has not appeared in the action, it has been defaulted, and according to Plaintiff, there is little hope that M.N.S. will satisfy any judgment against it. It is possible that without the Rule 54(b) judgment against DNF, review of the claim against DNF could be mooted if M.N.S. is found not to be liable for the FDCPA violations. But, in this case, where M.N.S has defaulted and the allegations of fact are accepted as true, that is unlikely. And, even if M.N.S. had appeared and was prepared to contest its liability at trial, all of the other relevant judicial administration factors support entry of the Rule 54(b) judgment as to DNF and the possibility that the claim against DNF might become moot is not enough to outweigh the factors in favor of the judgment.

DNF also argues that Plaintiff fails to show "no just reason for delay" because she waited

four months from the March 11, 2018 Opinion & Order before moving for entry of the Rule 54(b) judgment as to DNF. Again, DNF cites to *Birkes* for support. There, Judge Acosta noted that the defendants had waited for nearly one full year after the summary judgment ruling before seeking the Rule 54(b) judgment. *Birkes*, 2012 WL 2178964, at *3. He found that waiting this long "strongly suggest[ed] that Defendants do not possess the usual haste associated with the phrase 'no just cause for delay.'" *Id.*

*Birkes* is distinguishable. First, the time lapse here was only four months, not one year. Second, Plaintiff explains that part of the delay was the need for briefing on the motion for default to support a finding that service on M.N.S. was proper. Third, Judge Acosta noted the delay and the age of the case in discussing the defendants' request to stay the part of the litigation remaining in the district court should their Rule 54(b) motion be granted. *Id.* *Birkes* had already been pending for almost three years at the time the Rule 54(b) motion was filed. Here, the case is just over fifteen months old. Finally, Judge Acosta gave several reasons for denying the Rule 54(b) motion, relying most heavily on his determination that the claims were not legally or factually distinct. While he noted the one-year delay, it was not the most significant reason for his conclusion. Overall, Plaintiff's delay in seeking the Rule 54(b) judgment here is not enough to deny the motion.

Finally, consideration of the equities supports granting Plaintiff's motion. DNF suffers no prejudice by the entry of the judgment. The legal issue of its debt collector status is a close one with courts around the country issuing conflicting decisions. Plaintiff will appeal the dismissal of DNF either now or later. It is a question of when, not if. Granting the motion will expedite the inevitable. On the other hand, prejudice to all parties is created by the possibility of

inconsistent verdicts. And, with M.N.S. defaulted, Plaintiff's claim and damages will likely be decided based on a prima facie court hearing. If she prevails on appeal, then her claim against DNF will be tried to a jury, a right available to her under the FDCPA. *Tourgeman v. Nelson & Kennard*, No. 16-56190, 2018 WL 3965891, at *3 n.7 (9th Cir. Aug. 20, 2018) (FDCPA encompasses trial by jury). Thus, the Rule 54(b) judgment could preserve Plaintiff's jury trial rights.

## CONCLUSION

Plaintiff's motion for entry of Rule 54(b) judgment as to Defendant DNF [40], is granted. Plaintiff is directed to submit a proposed form of judgment within ten (10) days of the date of this Opinion. Upon entry of the Rule 54(b) judgment against DNF, the Court will stay the claim against M.N.S. pending resolution of the appeal.

IT IS SO ORDERED.

Dated this 23 day of Sept, 2018

Marco A. Hernandez
United States District Judge