**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
Lead Attorney for Plaintiff
819 SE Morrison St., Suite 255
Portland, OR 97214
kellydonovanjones@gmail.com
Tel: (503) 847-4329

**Kevin A. Mehrens, OSB No. 074589**
Of Attorneys for Plaintiff
Law Office of Kevin A. Mehrens
319 SW Washington, Suite 614
Portland, OR  97204
kevin.mehrens@gmail.com
Tel: (503) 489-8774

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **Jillian McAdory,** an Oregon consumer residing in Multnomah County, | Case No. 3:17-cv-00777-HZ |
| | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| **M.N.S. & Associates, LLC, and DNF Associates, LLC,** foreign limited liability companies, | Oral Argument Requested |
| Defendants. | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 1 of 76

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................5

INTRODUCTION ................................................................12

RELEVANT FACTS...............................................................13

LEGAL STANDARDS.............................................................18

    1.  Summary judgment.......................................................18

    2.  FDCPA....................................................................19

ARGUMENT ........................................................................20

    1.  Plaintiff is a "consumer"..............................................21

    2.  The Debt is a "consumer debt"......................................21

    3.  MNS is a "debt collector"...........................................22

    4.  FDCPA violations......................................................24

        4.1  The phone message did not meaningfully disclose the identity of the caller in violation of 15 U.S.C. § 1692d(6)...26

        4.2  The phone message, the first communication by MNS to collect the debt from plaintiff, did not disclose the information required by 15 U.S.C. § 1692e(11)...................27

        4.3  The words and phrases in the phone message could lead the least sophisticated consumer to believe that the message was from an attorney or an individual affiliated with a governmental entity, in violation of 15 U.S.C. § 1692e, § 1692e(1), and § 1692e(3) ...................................29

        4.4  The words and phrases in the phone message could lead the least sophisticated consumer to believe that they were being sued, that their property, including exempt government benefits, was going to be seized or garnished without due process if they did not pay the debt immediately, and/or that the debt had already been reduced to judgment, in violation

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 2 of 76

of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(4), §1692e(5), § 1692e(7), § 1692e(10), § 1692f, and § 1692f(6) ...................31

4.5    The content of the phone message represented conduct the natural consequence of which was to harass, oppress, or abuse plaintiff in violation of 15 U.S.C. § 1692d ...............36

4.6    The words and phrases in the phone message overshadowed the required validation notice in violation of 15 U.S.C. § 1692g.....................................................................................38

4.7    Debiting the funds from plaintiff's bank account on March 3, 2017, rather than March 4, 2017, as plaintiff authorized, and as the settlement agreement dictated, was in violation of 15 U.S.C. § 1692e, § 1692e(5), § 1692e(10), § 1692f, § 1692f(1), and § 1692f(6) ......................................................................41

4.8    MNS's failure to be registered, licensed, and bonded as a collection agency with the Oregon Department of Consumer and Business Services as required by ORS 697.015 before it collected or attempted to collect a claim owed or asserted to be owed to a third party from plaintiff was in violation of 15 U.S.C. § 1692e, § 1692e(5), § 1692e(10), and § 1692f .........43

5.   DNF is also a "debt collector" ......................................................45

6.   DNF is vicariously liable for the actions of MNS under general principles of agency law ...............................................................48

6.1    MNS had implied actual authority to act as DNF's agent .54

6.2    MNS had apparent authority to act as DNF's agent ..........57

6.3    DNF ratified MNS's unlawful collection practices .............60

6.3.1   DNF knowingly benefited from MNS's unlawful collection practices .......................................................61

6.3.2   DNF's willful ignorance ...............................................64

7.   DNF's "affirmative defenses" .......................................................66

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 3 of 76

7.1    Failure to state a claim ........................................................67

7.2    Article III standing................................................................67

7.3    Statute of limitations ...........................................................72

7.4    DNF's status as a "debt collector".....................................72

7.5    Plaintiff's or third parties' fault.........................................73

CONCLUSION.....................................................................................74

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

## Cases

*Afewerki v. Anaya Law Grp.*,
    868 F.3d 771 (9th Cir. 2017) ...................................................25, 31

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................19

*Baker v. G.C. Servs. Corp.*,
    677 F.2d 775 (9th Cir. 1982) ......................................................73

*Bankston v. Phycom Corp.*,
    No. C 07-03982 JF (PVT), 2007 U.S. Dist. LEXIS 89284 (N.D.
    Cal. Nov. 19, 2007) .....................................................................35

*Barbato v. Greystone All., LLC*,
    916 F.3d 260 (3d Cir.), *cert. denied sub nom. Crown Asset Mgmt.*
    *LLC v. Barbato*, 140 S. Ct. 245 (2019) ............................45, 46, 50

*Bentley v. Great Lakes Collection Bureau*,
    6 F.3d 60 (2d Cir. 1993) ..............................................................34

*Byrne v. Or. One, Inc.*, No. 3:16-cv-01910-SB, 2017 WL 3568412, 2017
    U.S. Dist. LEXIS 132538 (D. Or. July 18, 2017) ..................68, 69

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
    213 F.3d 474 (9th Cir. 2000) ......................................................18

*Carn v. Med. Data Sys. (In re Cambron)*,
    Nos. 1:07-cv-00370-WHA, 05-11879, 2007 U.S. Dist. LEXIS
    89615 (M.D. Ala. Dec. 5, 2007) .................................................35

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................19

*Clark v. Cap. Credit & Collection Servs., Inc.*,
    460 F.3d 1162 (9th Cir. 2006) .........................................19, 24, 28

*Currier v. First Resol. Inv. Corp.*,
    762 F.3d 529 (6th Cir. 2014) ......................................................25

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) ....................................................19

*Ditty v. CheckRite*,
    973 F. Supp. 1320 (D. Utah 1997) ..................................54, 55, 57

*Donohue v. Quick Collect, Inc.*,
    592 F.3d 1027 (9th Cir. 2010) ...............................................20, 25

*Driesen v. RSI Enters., Inc.,*
　　No. CV-18-08140-PCT-DWL, 2019 WL 283646, 2019 U.S. Dist.
　　LEXIS 9795 (D. Ariz. Jan. 22, 2019) ....................................28, 69

*Dunn v. Derrick E. McGavic, P.C.,*
　　653 F. Supp. 2d 1109 (D. Or. 2009) .............................................40

*Durham v. Cont'l Cent. Credit,*
　　No. 07cv1763 BTM(WMc), 2009 WL 3416114, 2009 U.S. Dist.
　　LEXIS 96760 (S.D. Cal. Oct. 19, 2009)..................................38, 40

*Evory v. RJM Acquisitions Funding L.L.C.,*
　　505 F.3d 769 (7th Cir. 2007) ......................................................37

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
　　76 F.3d 259 (9th Cir. 2006) ........................................................63

*Fox v. Citicorp Credit Servs.,*
　　15 F.3d 1507 (9th Cir. 1994) ......................................................51

*Freeman v. ABC Legal Servs., Inc.,*
　　827 F. Supp. 2d 1065 (N.D. Cal. 2011) .......................................20

*Friends of the Earth v. Laidlaw Envtl. Servs.,*
　　528 U.S. 167 (2000) ...................................................................68

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,*
　　374 F.3d 56 (2d Cir. 2004)...........................................................23

*Gonzales v. Arrow Fin. Servs., Inc.,*
　　660 F.3d 1055 (9th Cir. 2011) .........................................19, 29, 32

*Goray v. Unifund CCR Partners,*
　　No. 06-00214 HG/LEK, 2007 WL 4260017, 2007 U.S. Dist.
　　LEXIS 89552 (D. Haw. Dec. 4, 2007)..........................................44

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
　　896 F.2d 1542 (9th Cir. 1989) ....................................................62

*Hancock v. Legal Recovery Law Offs., Inc.,*
　　No. 14cv0153 JAH(NLS), 2015 WL 12532470, 2015 U.S. Dist.
　　LEXIS 191646 (S.D. Cal. June 23, 2015) ....................................36

*Hart v. Credit Control, LLC,*
　　871 F.3d 1255 (11th Cir. 2017) ..................................................28

*Hawaiian Paradise Park Corp. v. Friendly Broad. Co.,*
　　414 F.2d 750 (9th Cir. 1969) ......................................................57

*Heathman v. Portfolio Recovery Assocs.,*
　　*LLC*, No. 12-CV-201-IEG (RBB), 2013 WL 755674, 2013 U.S.
　　Dist. LEXIS 27057 (S.D. Cal. Feb. 27, 2013).............................41

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 6 of 76

*Henderson v. United Student Aid Funds, Inc.*,
    918 F.3d 1068 (9th Cir. 2019) .............................................. passim

*Hernandez v. Kokor*, No. 1:16-cv-00716-DAD-MJS (PC), 017 WL
    4004165, 2017 U.S. Dist. LEXIS 147582 (E.D. Cal. Sept. 12,
    2017) .................................................................................. 67

*Hingston v. Quick Collect, Inc.*,
    No. 3:15-cv-1202-HZ, 2016 WL 4059158, 2016 U.S. Dist. LEXIS
    98627 (D. Or. July 28, 2016) ..................................... 22, 23

*Horowitz v. GC Servs. Ltd. P'ship*,
    No. 14cv2512-MMA RBB, 2016 U.S. Dist. LEXIS 172359 (S.D.
    Cal. Dec. 12, 2016) ................................................ 26, 27

*Hosseinzadeh v. M.R.S. Assocs.*,
    387 F. Supp. 2d 1104 (C.D. Cal. 2005) ......................... 26, 27

*Janetos v. Fulton Friedman & Gullace, LLP*,
    825 F.3d 317 (7th Cir. 2016) ..................................... 50, 51

*Jones v. Royal Admin. Servs.*,
    887 F.3d 443 (9th Cir. 2018) ........................................ 53

*Kaiser v. Cascade Cap., LLC*,
    No. 3:16-cv-00744-AC, 2018 WL 1521892, 2018 U.S. Dist. LEXIS
    51845 (D. Or. Mar. 28, 2018) ..................................... 70, 71

*Kersten v. Quick Collect, Inc.*,
    No. 1:14-cv-00668-CL, 2014 U.S. Dist. LEXIS 179601 (D. Or.
    Dec. 2, 2014) ........................................................... 28

*Kitchens v. Lent*,
    No. 1:17-cv-00672-DAD-SKO, 2017 WL 5151206, 2017 U.S. Dist.
    LEXIS 185547 (E.D. Cal. Nov. 7, 2017)........................... 37

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...................................... 71

*Kuhn v. Account Control Tech.*,
    865 F. Supp. 1443 (D. Nev. 1994) ................................. 44

*Lovelace v. Stephens & Michaels Assocs.*,
    No. 07-10956, 2007 WL 3333019, 2007 U.S. Dist. LEXIS 83281
    (E.D. Mich. Nov. 9, 2007) ........................................... 43

*Madison v. Goldsmith & Hull*,
    No. 5:13-cv-01655 EJD, 2013 WL 5769979, 2013 U.S. Dist.
    LEXIS 153168 (N.D. Cal. Oct. 24, 2013) ......................... 73

*Martinez v. Integrated Cap. Recovery, LLC*,
    No. 20-CV-00582-AWI-SAB, 2021 U.S. Dist. LEXIS 6747 (E.D.
    Cal. Jan. 12, 2021)................................................... 69

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Mashiri v. Epsten Grinnell & Howell,*
    845 F.3d 984 (9th Cir. 2017) .......................................................40

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .......................................................................19

*McAdory v. M.N.S. & Assocs., Ltd. Liab. Co.,*
    952 F.3d 1089 (9th Cir. 2020) ...................................13, 45, 47, 48

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*
    637 F.3d 939 (9th Cir. 2011) ...........................................35, 66, 71

*Mejia v. Marauder Corp.,*
    No. C06-00520 HRL, 2007 WL 806486, 2007 U.S. Dist. LEXIS
    21313 (N.D. Cal. Mar. 15, 2007) ..................................................73

*Meyer v. Holley,*
    537 U.S. 280 (2003) .............................................................49, 51

*Nelson v. Equifax Info. Servs., LLC,*
    522 F. Supp. 2d 1222 (C.D. Cal. 2007).......................................71

*Ochwat v. Pinnacle Asset Grp., L.L.C.,*
    No. 2:15-cv-2130-JAM-EFB, 2016 WL 3541452, 2016 U.S. Dist.
    LEXIS 82553 (E.D. Cal. June 24, 2016) .....................................30

*Okyere v. Palisades Collection, LLC,*
    961 F. Supp. 2d 508 (S.D.N.Y. 2013) ..........................................49

*Pipiles v. Credit Bureau of Lockport, Inc.,*
    886 F.2d 22 (2d Cir. 1989)............................................................34

*Pollice v. Nat'l Tax Funding, L.P.,*
    225 F.3d 379 (3d Cir. 2000)..........................................................50

*Prindle v. Carrington Mortg. Servs., LLC,*
    No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, 2016 U.S. Dist.
    LEXIS 108386 (M.D. Fla. Aug. 16, 2016) ...................................69

*Puglisi v. Debt Recovery Sols., LLC,* No. 08-CV-5024 (JFB) (WDW),
    2010 WL 376628, 2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan. 26,
    2010)..............................................................................................42

*Reygadas v. DNF Assocs., LLC,*
    982 F.3d 1119 (8th Cir. 2020) .....................................................46

*Rosenau v. Unifund Corp.,*
    539 F.3d 218 (3d Cir. 2008).........................................................29

*Salyers v. Metro. Life Ins. Co.,*
    871 F.3d 934 (9th Cir. 2017) .....................................54, 57, 58, 60

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 8 of 76

*Scott v. Fed. Bond & Collection Serv.*,
  No. 10-CV-02825-LHK, 2011 WL 176846, 2011 U.S. Dist. LEXIS
  5278 (N.D. Cal. Jan. 19, 2011) ....................................................73

*Scott v. J. Anthony Cambece Law Off., P.C.*,
  600 F. Supp. 2d 479 (E.D.N.Y. 2009)............................................44

*Sims v. Peak Legal Advocates*, No. SACV 18-1199 JVS (KESx), 2018
  WL 8731538, 2018 U.S. Dist. LEXIS 196245 (C.D. Cal. Nov. 16,
  2018).............................................................................................67

*Slenk v. Transworld Sys., Inc.*,
  236 F.3d 1072 (9th Cir. 2001) .......................................................21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................68, 69

*Swanson v. S. Or. Credit Serv.*,
  869 F.2d 1222 (9th Cir. 1988) .................................................24, 38

*Terran v. Kaplan*,
  109 F.3d 1428 (9th Cir. 1997) .........................................24, 38, 39

*United States v. Acad. Mortg. Corp.*,
  No. 16-cv-02120-EMC, 2020 U.S. Dist. LEXIS 226154 (N.D. Cal.
  Dec. 2, 2020) ................................................................................67

*United States v. ACB Sales & Serv., Inc.*,
  590 F. Supp. 561 (D. Ariz. 1984)...................................................34

*United States v. Gosselin World Wide Moving, N.V.*,
  411 F.3d 502 (4th Cir. 2005) .........................................................62

*United States v. Milovanovic*,
  678 F.3d 713 (9th Cir 2012) ..........................................................49

*Van Westrienen v. Americontinental Collection Corp.*,
  94 F. Supp. 2d 1087 (D. Or. 2000) ................................................24

*Villanueva v. Account Discovery Sys., L.L.C.*,
  77 F. Supp. 3d 1058 (D. Colo. 2015)..............................................42

*Wade v. Reg'l Credit Ass'n*,
  87 F.3d 1098 (9th Cir. 1996) .........................................................24

*Withers v. Eveland*,
  988 F. Supp. 942 (E.D. Va. 1997)..................................................34

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) .......................................................71

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ................................................67, 72

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Statutes**

Fair Debt Collection Practices Act ................................................. passim

ORS 607.031(2)(a) .................................................................. 44

ORS 607.031(2)(b) .................................................................. 44

ORS 697.005(1)(a) .................................................................. 43

ORS 697.005(8) ...................................................................... 43

ORS 697.015 ....................................................................... 43, 44

ORS 697.031 .......................................................................... 43

Telephone Consumer Protection Act ............................................. 61

15 U.S.C. § 1692a(3) ................................................................ 15

15 U.S.C. § 1692a(5) ................................................................ 21

15 U.S.C. § 1692a(6) ...................................................... 22, 45, 46

15 U.S.C. § 1692b ................................................................... 26

15 U.S.C. § 1692d ............................................................. 25, 36, 37

15 U.S.C. § 1692d(6) ..................................................... 26, 27, 56, 68

15 U.S.C. § 1692e .............................................................. passim

15 U.S.C. § 1692e(1) ................................................................ 29

15 U.S.C. § 1692e(2)(A) ............................................................ 31

15 U.S.C. § 1692e(3) ........................................................... 29, 30

15 U.S.C. § 1692e(4) ................................................................ 31

15 U.S.C. § 1692e(5) ........................................................... passim

15 U.S.C. § 1692e(7) ........................................................... 31, 32

15 U.S.C. § 1692e(10) .......................................................... passim

15 U.S.C. § 1692e(11) .......................................................... passim

15 U.S.C. § 1692f ............................................................... passim

15 U.S.C. § 1692f(1) ......................................................... 35, 41, 43

15 U.S.C. § 1692f(6) ...............................................................31, 41

15 U.S.C. § 1692g.............................................................passim

15 U.S.C. § 1692g(a)................................................................38

15 U.S.C. § 1692g(b)...........................................................38, 40

15 U.S.C. § 1692k.....................................................................12

15 U.S.C. § 1692k(d) ...............................................................72

**Rules**

FRCP 56(a) ...............................................................................18

**Other Authorities**

H.R. Rep. No. 131, 95th Cong., 1st Sess. 13 (1977) ...............................36

H.R. Rep. No. 1202, 94th Cong., 2d Sess. 7 (1976) ................................36

Restatement (Third) of Agency.......................................................passim

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## LR 7.1 CERTIFICATION

Undersigned counsel for Plaintiff Jillian McAdory (plaintiff or Ms. McAdory) certifies that he conferred with counsel for the remaining non-defaulted Defendant DNF Associates, LLC (DNF) by phone and email in an attempt to resolve the issues raised in this motion but was unsuccessful. DNF opposes this motion.

## MOTION

Plaintiff moves for summary judgment as to all counts of her Fair Debt Collection Practices Act (FDCPA) claim against M.N.S. & Associates, LLC (MNS), DNF's vicarious liability for MNS's FDCPA violations based upon federal common law agency principles, and DNF's affirmative defenses. Plaintiff preserves her request for the jury to determine an appropriate amount of actual and statutory damages under 15 U.S.C. § 1692k.

## INTRODUCTION

Plaintiff alleges that MNS violated numerous provisions of the FDCPA during its collection of a debt owed to DNF. Plaintiff alleges that DNF is jointly and vicariously liable for MNS's FDCPA violations because DNF, like MNS, is a debt collector under the FDCPA, and MNS was acting in the scope of its authority as DNF's agent when it violated the FDCPA in the collection of a debt from plaintiff.

The Court granted DNF's motion to dismiss asserting that it was not a "debt collector" under the FDCPA. Doc. 27. The Court entered an order of default against MNS for failing to appear and defend in this action. Doc. 39. Plaintiff appealed the final judgment dismissing DNF to the Ninth Circuit. Doc. 46. The Ninth Circuit reversed and remanded the dismissal of DNF from the case. Doc. 48; *McAdory v. M.N.S. & Assocs., Ltd. Liab. Co.*, 952 F.3d 1089 (9th Cir. 2020). DNF petitioned the Ninth Circuit for rehearing en banc, but its petition was denied. Doc. 49. DNF then filed a petition for certiorari in the U.S. Supreme Court, which was also denied. Doc. 61. On remand, plaintiff filed a Second Amended Complaint with consent of DNF. Doc. 55.

## RELEVANT FACTS

In December 2015, Kay Jewelers extended credit to plaintiff for the purchase of jewelry for her personal use. Declaration of Kelly D. Jones (Jones Decl.) ¶2, Ex. 1 at 2-8; Declaration of Jillian McAdory (McAdory Decl.) ¶2; Jones Decl. ¶3, Ex. 2 at 31:15-20.

Kay Jewelers designated the credit account a number ending in 8123 (Debt). Ex. 1 at 1; McAdory Decl. ¶3, Ex. A. Because her sole income was from monthly Social Security disability payments, plaintiff could not afford to pay back the Debt. McAdory Decl. ¶4. In the fall 2016, Kay Jewelers charged off the Debt and sold it to DNF. McAdory Decl. ¶5, Ex. B.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 13 of 76

In late November 2016, plaintiff received a letter from a debt collector named First Choice Assets, LLC (First Choice). McAdory Decl. ¶6, Ex. C. The First Choice letter stated that DNF was the current creditor that the Debt was owed to, listed Kay Jewelers as the original creditor of the Debt, and referenced the account number ending in 8123. *Id*. The First Choice letter also provided a DNF file number of 51839381, listed a balance due on the Debt of $2,235.77, and requested plaintiff pay that amount. *Id*. Because plaintiff only had a small monthly Social Security disability income, she could not afford to pay back the Debt when she received the letter. McAdory Decl. ¶7.

In February 2017, because First Choice was unsuccessful in collecting money for DNF on the Debt, DNF assigned the Debt to MNS, thereby authorizing MNS to collect the Debt from plaintiff on its behalf. Jones Decl. ¶4, Ex. 3; Jones Decl. ¶5, Ex. 4 at 35:18-22, 168:23-169:13. The portfolios that DNF assigned to MNS to collect on its behalf in February 2017, one of which included the Debt, included 460 debts. Ex. 3 at 2, 4. These 406 debts were just a small fraction of the approximately 13,304 debts owned by DNF that DNF placed with MNS for collection between May 1, 2016 and May 1, 2017. Jones Decl. ¶6, Ex. 5 ¶8.

MNS's collection of the Debt for DNF was governed by a Collection Services Agreement (Services Agreement) entered into in

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

2014 between DNF and MNS's predecessor entity. Jones Decl. ¶7, Ex. 6;
Jones Decl. ¶8, Ex. 7 ¶¶59-60; Ex. 4 at 168:23-169:13.

      To facilitate the collection of the Debt, DNF provided sensitive
personal information about the Debt and plaintiff to MNS, including
plaintiff's Social Security number, address, and telephone number.
Jones Decl. ¶9, Ex. 8 ¶¶18-20. DNF knew that MNS would call plaintiff
to attempt to collect the Debt, and in fact the Services Agreement
required MNS to place phone calls to plaintiff to collect on the Debt. Ex.
8 ¶32; Ex. 6 ¶2.

      On February 24, 2017, plaintiff received a voicemail message
(phone message) from an MNS agent. McAdory Decl. ¶¶8-9, Ex. D at 1.
The call was made from 786-646-6488, and the phone message states as
follows:

> Hello this message is intended for Jillian McDory [sic]. I'm
> calling in regards to asset verification and to confirm the
> address and place of employment. I was forwarded
> documentation at this verified name and Social Security
> number in regards to a process for enforceable review.
> Please be advised we are requesting fees assigned for and
> respond for required notice so before I go ahead and begin
> to schedule your document I wanted to inform you the
> process is being expedited and should commence within 24
> to 48 hours from this point in time. Any questions contact
> an adviser directly at 877-937-0518, reference the file
> number 51839381.

*Id.*; Jones Decl. ¶10, Ex. 9. The phone message is the first
communication that plaintiff received from MNS. McAdory Decl. ¶10.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 15 of 76

Within an hour after listening to the phone message, plaintiff called the number in the message and spoke with an MNS agent who referred to himself as Michael Shaw (Mr. Shaw). Mr. Shaw asked plaintiff if she knew that DNF had purchased the Debt from Kay Jewelers, told her he was collecting the Debt on behalf of DNF, and referenced the same DNF file number that was on the phone message and the First Choice letter. *Id.* ¶11; Ex. D at 1; Ex. 2 at 20:12-20, 26:18-20, 43:9-11, 43:20-23, 58:3-5, 61:19-62:5, 66:13-25, 71:15-22, 72:7-14. During this call Mr. Shaw also reiterated the statements and threats made in the phone message, and offered to settle the Debt for $894.30. McAdory Decl. ¶12.

Although plaintiff's income still only consisted of a small Social Security disability stipend, because of the threats, false sense of urgency, confusion, and distress caused by the phone message, and the reiteration of those threats during plaintiff's first call, plaintiff made another call to Mr. Shaw at MNS, less than an hour after her first call, and agreed to pay the $894.30. *Id.*; Ex. D at 2. Plaintiff gave MNS her bank account information and authorization to debit her account on March 4, 2017. McAdory Decl. ¶12. Plaintiff stressed the importance of not debiting her bank account before March 4 because that is when she was confident that her monthly Social Security benefits would be available in her account. *Id.*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Shortly after the second phone call, plaintiff received an email from MNS instructing her to sign a settlement agreement. McAdory Decl. ¶13, Ex. E at 1. The settlement agreement provided, under the heading "Arrangements": "$894.30 To be withdrawn 3/4/2017." *Id.* at 2. The settlement agreement bears MNS's logo and MNS's address in Amherst, New York; listed DNF as the current creditor; listed Kay Jewelers as the original creditor; and listed the same DNF file number (51839381) referenced in the phone message and listed in the First Choice letter. *Id*. Plaintiff signed the settlement agreement electronically on February 26, 2017. *Id.* at 2-3.

On March 3, 2017, plaintiff received from MNS an email with a document titled "Paid in Full Letter" attached. McAdory Decl. ¶14, Ex. F. After reading MNS's "Paid in Full Letter," plaintiff became extremely distressed because it appeared that MNS had prematurely debited her bank account before March 4, 2017 as agreed. McAdory Decl. ¶15. Plaintiff believed she would not have enough money in her account to cover the premature debit until her monthly Social Security disability benefits were deposited and available. *Id*.; Ex. 2 at 85:24-86:17. Agreeing to the settlement payment was already a hardship that would cause plaintiff to delay essential expenses like rent, but the premature debit caused plaintiff additional worry that her bank account would be overdrafted and that she would not be able to pay for her other needs.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

McAdory Decl. ¶15. Plaintiff logged into her bank account online and realized that MNS had indeed debited her bank account a day earlier than agreed. *Id.*; McAdory Decl. ¶16, Ex. G at 1, 6. Plaintiff immediately forwarded MNS's "Paid in Full letter" to her mother, and contacted her mother to borrow money to cover MNS's premature debit. McAdory Decl. ¶16, Ex. H; Ex. D at 2; Ex. G at 4; Ex. 2 at 53:16-54:4.

After obtaining the funds from plaintiff's account, MNS remitted $626.01 (70%) and retained $268.29 (30%) of the $894.30 that it collected from plaintiff on DNF's behalf, consistent with the agreement between DNF and MNS. Jones Decl. ¶11, Ex. 10; Ex. 4 at 169:22-171:15.

## LEGAL STANDARDS

### 1.    Summary judgment

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).

When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). When the nonmoving party has the burden of

proof at trial, the moving party can meet its burden on summary judgment by pointing out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## 2.    FDCPA

"[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). "The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Gonzales v. Arrow Fin. Servs., Inc.*, 660 F.3d 1055, 1060-61 (9th Cir. 2011). Because

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

the FDCPA is a remedial statute, it must be construed liberally in favor of the consumer. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010).

## ARGUMENT

"In order to state a claim under the FDCPA, a plaintiff must show: 1) that he is a consumer; 2) that the debt arises out of a transaction entered into for personal purposes; 3) that the defendant is a debt collector; and 4) that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011). There are no genuine issues of material fact as to these four elements that plaintiff needs to establish to prove that MNS violated the FDCPA when collecting the Debt from plaintiff.

DNF is jointly and vicariously liable for MNS's violations of the FDCPA (1) if it is also a "debt collector" under the FDCPA, and (2) if MNS was acting as DNF's agent when MNS violated the FDCPA in collecting the Debt from plaintiff. There are no genuine issues of fact as to whether MNS was acting as DNF's agent in collecting the Debt on DNF's behalf. Either DNF's affirmative defenses are inapplicable or there is an absence of evidence to support the defenses. Therefore, summary judgment should be granted for plaintiff on all of her FDCPA counts, leaving only the amount of plaintiff's damages to be determined by the jury.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1. **Plaintiff is a "consumer"**

Under the FDCPA, "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). There is no dispute that plaintiff is a natural person or that she was obligated or allegedly obligated to pay the Debt. Ex. B, C, E.

2. **The Debt is a "consumer debt"**

The FDCPA defines the term "debt" as "[a]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Courts "look to the substance of the transaction and the borrower's purpose in obtaining the loan" in deciding whether it was incurred for "personal, family, or household purposes." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir. 2001). There is no genuine issue of fact as the whether the Debt is a "consumer debt" because the Debt arose from credit extended to Ms. McAdory by Kay Jewelers for her purchase of jewelry for a personal non-business purpose. *See* McAdory Decl. ¶2; Ex. 2 at 31:15-20 ("Q. And what did you purchase from Kay Jewelers to incur that debt? Do you remember? A. Yes. It was two gold necklaces. Q. And did you purchase those for your personal use? A. Yes.").

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

### 3.    MNS is a "debt collector"

One of the definitions of "debt collector" under the FDCPA is "any person . . . who *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

Because a collection agency's status as a debt collector under the FDCPA is rarely, if ever, in doubt, most of the caselaw discussing the "regularly collects" definition deal with attorneys or debt collection law firms. In assessing whether an attorney defendant met the definition of debt collector under the "regularly collects" prong, this Court's reasoning in *Hingston v. Quick Collect, Inc.*, should be helpful.[1] No. 3:15-cv-1202-HZ, 2016 WL 4059158, 2016 U.S. Dist. LEXIS 98627 (D. Or. July 28, 2016). In *Hingston*, in discussing a Second Circuit decision, this Court utilized a non-exclusive list of factors to assess whether the attorney "regularly collects" debts owed to others, including,

> the absolute number of debt collection communications issued over the relevant period, the frequency of such communications, any discernable patterns of debt collection, whether the law firm has specific personnel assigned to work on debt collection activity, whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer to assist in the collection of consumer debts, and whether the firm advertises its services for debt collection.

---

[1] There was no dispute that the other defendant, a collection agency that hired the attorney defendant to collect the debt, was a "debt collector." *Id.* at *9 ("The parties agree and the record reflects that QCI is 'a debt collector' as defined by USC § 1692a(6).").

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** – Page 22 of 76

*Id*. at *8-9 (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004)).

In contrast to *Hingston*, here there is no genuine issue of material fact that MNS "regularly" collects debts owed or alleged to be owed by others—including in 2017 when it violated the FDCPA. Unlike the attorney and law firm in *Hingston*, MNS is a debt collection agency and its sole business is to collect debts owed to others. On its website, MNS clearly advertises and markets its services to collect debts for its client debt owners, and that it has a staff that aids in this work. Jones Decl. ¶12, Ex. 11 at 1 (referring to its business as "Debt Resolution Services"); *id*. ("At MNS & Associates LLC, our attentive staff is available Monday through Friday to answer all of your questions and ensure you are 100% satisfied."); *id*. at 2 ("If you wish to make an online payment to your account, please click the link below and it will direct you to our secure payment form."); *id*. at 3 ("Our attentive staff makes every effort to ensure you are 100% satisfied.").

Just looking at debts owed to DNF that MNS collected for DNF in the year period just prior to MNS's conduct at issue here, it is clear that MNS's collection of debts owed to others is frequent and regular. *See* Ex. 5 ¶8 ("DNF placed approximately 13,304 accounts with MNS for collection between May 1, 2016 through May 1, 2017."); s*ee also* Ex. 4. at 171:16-20 ("Q. Earlier we talked a little bit about MNS, and MNS's

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 23 of 76

status as a debt collector. And we established that MNS regularly collects debts, and has throughout time for DNF, correct? A. Correct.").

Because MNS "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," it is a "debt collector" under the FDCPA as a matter of law.

### 4.    FDCPA violations

"Whether language employed in connection with the collection of a debt violates the FDCPA is a question of law for the court to decide." *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1099 (D. Or. 2000) (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997)). Whether a communication or attempt to collect a debt violates the FDCPA is assessed from the objective point of view of the "least sophisticated consumer." *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

This objective "least sophisticated debtor" standard "ensures that the FDCPA protects all consumers the gullible as well as the shrewd[,] . . . the ignorant, the unthinking and the credulous." *Clark*, 460 F.3d at 1171 (internal quotation marks and citation omitted). "One who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line." *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1228 (9th Cir. 1988) (internal quotation marks and citation omitted).

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 24 of 76

To constitute a violation of § 1692e, allegedly false or misleading statements must be "material." *Donohue*, 592 F.3d at 1033. "Material" statements are "those that could cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 773 (9th Cir. 2017) (internal quotation marks and citation omitted).

It is well established that a single prohibited act, omission, or communication can simultaneously violate multiple overlapping provisions of the FDCPA, including the general and enumerated provisions of §§ 1692d, e, f, and g. *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014) (discussing this concept in detail).

Plaintiff alleges that the phone message MNS left on plaintiff's phone violated multiple provisions of the FDCPA, including the general and enumerated subsections of §§ 1692d, e, f, and g. Plaintiff also alleges that MNS's debiting of her bank account a day earlier than agreed, and MNS's failure to be licensed in Oregon as a debt collection agency as required by Oregon law, violated the general and enumerated subsections of §§ 1692e and f. Doc. 55 ¶28. Because there are no genuine issues of material fact regarding MNS's violations of the FDCPA, and because in the Ninth Circuit whether a debt collector's conduct violates the FDCPA is determined as a matter of law, the Court should grant

plaintiff summary judgment finding that MNS violated the FDCPA as to each count alleged by plaintiff, as set forth in detail below.

### 4.1. The phone message did not meaningfully disclose the identity of the caller in violation of 15 U.S.C. § 1692d(6)

15 U.S.C. § 1692d(6) provides that "[e]xcept as provided in section 1692b[2] of this title, the placement of telephone calls without meaningful disclosure of the caller's identity" violates the FDCPA.

Under § 1692d(6), "meaningful disclosure," including in a telephone message, "requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked." *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) (granting summary judgment to the plaintiff that debt collector defendant violated § 1692d(6) when its employees failed to disclose debt collector's identity and nature of its business as debt collector in messages left on the plaintiff's answering machine); *Horowitz v. GC Servs. Ltd. P'ship*, No. 14cv2512-MMA RBB, 2016 U.S. Dist. LEXIS 172359, at *34 (S.D. Cal. Dec. 12, 2016) (noting that "[c]ourts in this Circuit have concluded that where a debt collection agency's employees fail to disclose the defendant's identity and the

---

[2] Section 1692b governs a debt collector's communications "with any person other than the consumer for the purpose of acquiring location information about the consumer" and thus has no application to the facts here.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 26 of 76

nature of defendant's business in calls or messages, they violate section 1692d(6)'s meaningful disclosure requirement," and granting the plaintiff summary judgment on her 1692d(6) claim because "Defendant does not dispute the content of the voicemail, and the agent leaving the voicemail only stated her name, but not that she was calling on behalf of GCS, or the nature of GCS's business as a debt collection agency").

Here, as in *Hosseinzadeh* and *Horowitz*, there is no genuine issue of material fact that the MNS agent who left the phone message failed to state that the call was from and on behalf of MNS, or that MNS was a debt collector. Therefore, the Court should grant summary judgment to plaintiff on this count as a matter of law.

### 4.2. The phone message, the first communication by MNS to collect the debt from plaintiff, did not disclose the information required by 15 U.S.C. § 1692e(11)

15 U.S.C. § 1692e(11) provides that "the failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" violates the FDCPA.

The phone message was MNS's first communication with plaintiff in an attempt to collect the Debt. McAdory Decl. ¶10. The phone message did not contain the "mini Miranda" warning required by §

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 27 of 76

1692e(11). *See* Ex. 9. A recent decision of the Eleventh Circuit, *Hart v. Credit Control, LLC*, 871 F.3d 1255 (11th Cir. 2017), with analogous facts is instructive. In *Hart* the court held:

> Whether it was the debt collector's first communication with the consumer is significant only in determining whether the debt collector should have given the required disclosures, also known as the "mini Miranda" warning. Here, Credit Control should have provided Hart with the required disclosures. The FDCPA requires the "mini Miranda warning" to be given in the initial communication between a debt collector and consumer. Specifically, this warning requires that the debt collector disclose that he or she is "attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). In this case, because the voicemail was not only a communication, but the first communication, Credit Control was required to do just that.

*Id*. at 1258; *see also Kersten v. Quick Collect, Inc.*, No. 1:14-cv-00668-CL, 2014 U.S. Dist. LEXIS 179601, at *11 (D. Or. Dec. 2, 2014) (granting summary judgment to the plaintiff on her § 1692e(11) claim because it was "uncontroverted" that defendant left telephone message for the plaintiff in which it failed to convey information required by § 1692e(11)).

MNS's failure to provide this information in the phone message is a material omission because it is mandated by the FDCPA. *See, e.g.*, *Driesen v. RSI Enters., Inc.*, No. CV-18-08140-PCT-DWL, 2019 WL 283646, 2019 U.S. Dist. LEXIS 9795, at *13 (D. Ariz. Jan. 22, 2019) (explaining that "[t]he least sophisticated consumer would not necessarily know the 'important message' related to attempting to

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

collect a debt from [the plaintiff] or that any information obtained from [the plaintiff] during a subsequent call would be used for the purpose of attempting to collect the debt. Indeed, Congress presumably felt it necessary to mandate such disclosures because it perceived that some consumers would, in the absence of an affirmative warning, be confused and prone to manipulation."). The Court should grant summary judgment to plaintiff as to this count.

### 4.3. The words and phrases in the phone message could lead the least sophisticated consumer to believe that the message was from an attorney or an individual affiliated with a governmental entity, in violation of 15 U.S.C. § 1692e, § 1692e(1), and § 1692e(3)

15 U.S.C. § 1692e(1) prohibits "[t]he false representation or implication that the debt collector is . . . affiliated with the United States or any State." 15 U.S.C. § 1692e(3) prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney."

A collection communication is misleading or deceptive if it "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Gonzales*, 660 F.3d at 1061 (internal quotation marks and citation omitted). "[A] debt-collection letter can be deceptive under the FDCPA even if it only implies that it is from an attorney." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008) (reversing district court's dismissal of the plaintiff's § 1692e(3) claim, holding that "[i]t is

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 29 of 76

possible that the phrase 'Legal Department' could imply to the least sophisticated debtor that a lawyer was involved in drafting or sending the letter at issue" if debt collection agency defendant did not have a legal department or legal department did not send letter); *Ochwat v. Pinnacle Asset Grp., L.L.C.*, No. 2:15-cv-2130-JAM-EFB, 2016 WL 3541452, 2016 U.S. Dist. LEXIS 82553, at *6-7 (E.D. Cal. June 24, 2016) (the plaintiff's allegations that defendant collection agency told her boss that it was seeking wage garnishment and inquired as to her employee identification number and falsely told the plaintiff it was law office were sufficient to demonstrate, *inter alia*, violation of § 1692e(3) to support default judgment).

Here, DNF's agent's statements in the phone message, that he was "calling in regards to asset verification and to confirm the address and place of employment," that he "was forwarded documentation at this verified name and Social Security number in regards to a process for enforceable review," that "we are requesting fees assigned for and respond for required notice," "before I go ahead and begin to schedule your document," and that he "wanted to inform [plaintiff] the process is being expedited and should commence within 24 to 48 hours from this point in time," may lead the least sophisticated debtor to believe that the call was made from either an attorney or governmental agent who

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

had the power to initiate a lawsuit, to file legal documents, or to enforce a legal or administrative garnishment. Ex. 9.

MNS is not a law firm or any type of governmental entity. *See* Ex. 11. These misrepresentations are material because they create a false sense of urgency that payment needs to be made immediately to avoid a lawsuit or garnishment and therefore "could cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Afewerki*, 868 F.3d at 773. The court should grant summary judgment to plaintiff on this count as a matter of law.

> **4.4.** **The words and phrases in the phone message could lead the least sophisticated consumer to believe that they were being sued, that their property, including exempt government benefits, was going to be seized or garnished without due process if they did not pay the debt immediately, and/or that the debt had already been reduced to judgment, in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(4), §1692e(5), § 1692e(7), § 1692e(10), § 1692f, and § 1692f(6)**

15 U.S.C. § 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(4) prohibits "[t]he representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

taken or that is not intended to be taken." 15 U.S.C. § 1692e(7) prohibits "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *See also Gonzales*, 660 F.3d at 1062 (noting that "§1692e(10) prohibits the use of any false representation or deceptive means to collect . . . any debt" and "has been referred to as a 'catchall' provision, and can be violated in any number of novel ways" (internal quotation marks and citation omitted)).

15 U.S.C. § 1692f prohibits a debt collector's use of "unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing . . . (6) [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

Here, the DNF agent's statements in the phone message, that he was "calling in regards to asset verification and to confirm the address and place of employment," that he "was forwarded documentation at this

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 32 of 76

verified name and Social Security number in regards to a process for enforceable review," that "we are requesting fees assigned for and respond for required notice," "before I go ahead and begin to schedule your document," and that he "wanted to inform [plaintiff] the process is being expedited and should commence within 24 to 48 hours from this point in time," violate all eight of the referenced provisions of the FDCPA. Ex. 9.

These statements could cause the least sophisticated debtor to believe that there was a judgment already in place, or incorrectly, that a judgment was not necessary in order to garnish property, or that a lawsuit was about to be filed, and that their wages or benefits would be garnished if they did not immediately pay the Debt before the "24 to 48" hour "deadline." However, there was no judgment entered against plaintiff which would allow garnishment of her wages, benefits, or other property. Nor was there any intention to file a lawsuit against plaintiff. MNS is not a law firm and it was not authorized to initiate any legal action against debtors, including plaintiff, even if it had the legal capacity to do so. *See* Ex. 6 ¶19; Ex. 4 at 80:4-13 ("Q. And MNS isn't a government agency or a government agent, is it? A. Not that I know of. Q. Did MNS have authority from DNF to sue Ms. McAdory? A. No, they are just a collection agency for us. Q. So they don't ever sue – sue debtors or consumers on behalf of DNF? A. Not on behalf of DNF, no."). Nor was

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

DNF entitled to threaten an increase in the Debt by adding ambiguous fees without any known authority to do so. *See, e.g., Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (finding violations of §§ 1692e(5) and e(10) where least sophisticated consumer "would interpret the [debt collector's] language to mean that legal action was authorized, likely, and imminent"); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989) (finding violation of § 1692e(5) where collection letter included language, *inter alia*, that "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full" because it implied that "legal action [had] already been or [was] about to be initiated and [could] be averted from running its course only by payment"); *Withers v. Eveland*, 988 F. Supp. 942, 946-47 (E.D. Va. 1997) (granting summary judgment on the plaintiff's §§ 1692e(5) and e(10) claims because there was no evidence that the debt collector intended to take legal action or even had authority to file suit against the plaintiff); *United States v. ACB Sales & Serv., Inc.*, 590 F. Supp. 561, 571-72 (D. Ariz. 1984) (letters providing a "48 hour notice" and stating that the consumer must act immediately violated § 1692e(5) because the letters gave a "clear impression of the notice is that the agency will file a law suit if the debt is not paid within 48 hours," when collection agency had no intent to file lawsuit against debtors because it did not request authorization from creditors to sue and debtors and

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

applicable agreements did not authorize any legal actions by collection agencies in any event); *Carn v. Med. Data Sys. (In re Cambron)*, Nos. 1:07-cv-00370-WHA, 05-11879, 2007 U.S. Dist. LEXIS 89615, at *20 (M.D. Ala. Dec. 5, 2007) (finding that debt collector's letter requesting information about the plaintiff's assets and employment violated §§ 1692e(5) and e(10) because it "impliedly threatened to investigate the debtor's employment, contact others to find assets, garnish wages or seize assets, or take further collection efforts other than contacting the debtors, if they did not pay the debts, none of which it had any intention of doing"); *Bankston v. Phycom Corp.*, No. C 07-03982 JF (PVT), 2007 U.S. Dist. LEXIS 89284, at *10 (N.D. Cal. Nov. 19, 2007) (letter stating "URGENT COMMUNICATION" "we must make a decision regarding the future of this account very soon" may violate § 1692e "[b]ecause this language references legal action and expresses urgency, [and] it is reasonable to conclude that the least sophisticated debtor would believe that legal action was imminent"); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949-50 (9th Cir. 2011) (upholding district court's grant of summary judgment on the plaintiff's §§ 1692e(2) and f(1) counts where attorney debt collectors presented no admissible evidence indicating that they were allowed to collect their requested fees under any contract or law).

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The phone message's false, deceptive, and misleading representations are material because they could cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to MNS's collection efforts. The Court should grant summary judgment to plaintiff on this count.

> ### 4.5. The content of the phone message represented conduct the natural consequence of which was to harass, oppress, or abuse plaintiff in violation of 15 U.S.C. § 1692d

15 U.S.C. §1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Like §§ 1692e and f, § 1692d "provides a general rule prohibiting any debt collector from harassing or intimidating any person in connection with the collection of any debt or the threat or attempt to do so. Six examples of what constitutes harassment or intimidation are enumerated. These examples do not limit the general application of this rule against harassment or intimidation." H.R. Rep. No. 1202, 94th Cong., 2d Sess. 7 (1976); H.R. Rep. No. 131, 95th Cong., 1st Sess. 13 (1977).

"The Court evaluates this conduct [in assessing a violation of §1692d] from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Hancock v. Legal Recovery Law Offs., Inc.*, No. 14cv0153 JAH(NLS),

2015 WL 12532470, 2015 U.S. Dist. LEXIS 191646, at *10 (S.D. Cal. June 23, 2015) (internal quotation marks and citation omitted).

The clear effect of the language of the phone message was to create a false sense of urgency through misrepresenting the imminency of a legal action, including a lawsuit or a garnishment, and through a threatened increase in the amount Debt due to ambiguous collection fees, so that plaintiff would pay the Debt. This is "conduct the natural consequence of which is to harass, oppress, or abuse" a consumer in violation of §1692d. *See, e.g.*, *Kitchens v. Lent*, No. 1:17-cv-00672-DAD-SKO, 2017 WL 5151206, 2017 U.S. Dist. LEXIS 185547, at *8 (E.D. Cal. Nov. 7, 2017) (the plaintiff's allegations that defendant contacted her employer in attempt to garnish her wages sufficient for default judgment on § 1692d count); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 778 (7th Cir. 2007) (reversing district court's dismissal of the plaintiff's claims finding that "a threat to impose a penalty that the threatener knows is improper because unlawful is a good candidate for a violation of sections 1692d and e").

The Court should grant summary judgment to plaintiff finding that the phone message violated 15 U.S.C. § 1692d as a matter of law.

### 4.6. The words and phrases in the phone message overshadowed the required validation notice in violation of 15 U.S.C. § 1692g

15 U.S.C. § 1692g(a) requires a debt collector to send the customer, in the initial communication or within five days after the initial communication, written notice containing certain information about the debt, and notifying the consumer that the debt will be assumed to be valid unless the consumer contests or disputes the debt within 30 days.

"To be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Swanson*, 869 F.2d at 1225. After *Swanson*, Congress supplemented § 1692g to clarify that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

"The determination whether a collection [communication] violates § 1692g is subject to the 'least sophisticated debtor' standard and is a question of law reserved for the court." *Durham v. Cont'l Cent. Credit*, No. 07cv1763 BTM(WMc), 2009 WL 3416114, 2009 U.S. Dist. LEXIS 96760, at *13 (S.D. Cal. Oct. 19, 2009) (citing *Terran*, 109 F.3d at 1432). "A demand for payment within less than the thirty-day

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences." *Terran*, 109 F.3d at 1434. "For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g." *Id*.

As detailed *supra*, the language in the phone message created a false sense of urgency regarding impending legal action or garnishment and an increase in the Debt, so that plaintiff would call MNS promptly and pay the Debt to avoid that implied legal action, garnishment, or increased amount. The phone message served its purpose. Plaintiff promptly called MNS and subsequently agreed to settle the Debt, even though her only source of income was a small monthly Social Security disability stipend. Therefore, by the time plaintiff received MNS's § 1692g notice contained in the settlement agreement, she had already agreed to pay money to settle the Debt. MNS's phone message implied that only immediate payment could stop the ambiguous "enforceable review" legal "process" that would "commence within 24 to 48 hours," or the increased "fees" threatened by MNS, and thus disputing the Debt would be futile.

This is especially so when, as happened here, the § 1692g notice is presented in a settlement agreement after the debtor has already

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

agreed to settle a debt based upon a debt collector's abusive, misleading, and unfair practices. *See, e.g., Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984 (9th Cir. 2017) (debt collector's threat to file lien on consumer's home within 35 days if payment not made overshadowed consumer's right to request verification of debt and obtain freedom from debt collection activities until verification was sent); *Durham*, 2009 U.S. Dist. LEXIS 96760, at *15 (finding that language in letter stating "we may refer this account to our attorney for legal action, should he deem it appropriate. To prevent further collection efforts, payment in full is required immediately" may cause unsophisticated consumer to think that only immediate payment could avoid adverse legal action, and thus violated § 1692g(b) as matter of law); *Dunn v. Derrick E. McGavic, P.C.*, 653 F. Supp. 2d 1109, 1113-14 (D. Or. 2009) ("Without a clear explanation of the simple concept that [defendant] must cease litigation if [plaintiff] disputes the debt, the least sophisticated consumer is likely to wonder what good it would do him to dispute the debt if he cannot stave off a lawsuit. Consequently, [defendant's] threat of immediate lawsuit, court costs, and attorney fees may well encourage the least sophisticated consumer to make a hasty payment rather than dispute the debt. [Defendant's] letter therefore violates 15 U.S.C. § 1692g.").

When viewed from the perspective of the least sophisticated debtor, the content of MNS's phone message and MNS's conduct

overshadowed or was inconsistent with the disclosure of plaintiff's right to dispute the Debt. Therefore the Court should grant summary judgment to plaintiff on her 15 U.S.C. § 1692g count.

> **4.7.   Debiting the funds from plaintiff's bank account on March 3, 2017, rather than March 4, 2017, as plaintiff authorized, and as the settlement agreement dictated, was in violation of 15 U.S.C. § 1692e, § 1692e(5), § 1692e(10), § 1692f, § 1692f(1), and § 1692f(6)**

15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." However, "[s]ection 1692e(5)'s prohibition is not limited to threats; actions in fact taken are also actionable." *Heathman v. Portfolio Recovery Assocs.*, *LLC*, No. 12-CV-201-IEG (RBB), 2013 WL 755674, 2013 U.S. Dist. LEXIS 27057, at *9 n.3 (S.D. Cal. Feb. 27, 2013).

15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . (A) there is no present right to possession of the property."

As unambiguously set forth in the settlement agreement, plaintiff authorized MNS to debit $894.30 from her bank account—but not until March 4, 2017. *See* Ex. E at 2. This condition was important to plaintiff,

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

because that is when she was confident that her monthly Social Security benefits would be available in her account. McAdory Decl. ¶12. However, MNS debited plaintiff's account a day early on March 3, 2017. *Id*. ¶15; Ex. F; Ex. G at 1, 6; Ex. 4 at 95:11-20 (Q. "And so is it DNF's understanding, looking at this letter today, that this represented that MNS had been paid the settlement amount of the $894.07 [sic] here on March 3rd? A. Based on – based on what I am seeing here, yeah, it's a Paid in Full letter. Q. And typically you wouldn't expect to see a Paid if [sic] Full letter before the collection agency was actually paid, correct? A. Correct.").

Debiting funds from a consumer's bank account prematurely without authorization represents an action that cannot legally be taken, the collection of an amount not authorized by the agreement creating the debt or permitted by law, and a nonjudicial action to effect dispossession or of plaintiff's property when there is no present right to possession of her property. *See, e.g.*, *Puglisi v. Debt Recovery Sols., LLC*, No. 08-CV-5024 (JFB) (WDW), 2010 WL 376628, 2010 U.S. Dist. LEXIS 6120, at *12-13 (E.D.N.Y. Jan. 26, 2010) (finding that the plaintiff stated viable claims for violations of §§ 1692e and 1692f when, *inter alia*, debt collector withdrew funds from the plaintiff's account before date agreed to in letter and settlement agreement); *Villanueva v. Account Discovery Sys., L.L.C.*, 77 F. Supp. 3d 1058 (D. Colo. 2015) (finding that

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 42 of 76

unauthorized withdrawal of funds from the plaintiff's bank account stated claim under § 1692f(1)); *Lovelace v. Stephens & Michaels Assocs.*, No. 07-10956, 2007 WL 3333019, 2007 U.S. Dist. LEXIS 83281, at *11-12 (E.D. Mich. Nov. 9, 2007) (debt collector's debiting of the plaintiff's account without authorization stated claim under §§ 1692f and f(1)).

The Court should grant summary judgment to plaintiff on this count.

> **4.8. MNS's failure to be registered, licensed, and bonded as a collection agency with the Oregon Department of Consumer and Business Services as required by ORS 697.015 before it collected or attempted to collect a claim owed or asserted to be owed to a third party from plaintiff was in violation of 15 U.S.C. § 1692e, § 1692e(5), § 1692e(10), and § 1692f**

ORS 697.015 provides that "[a] person shall not operate as a collection agency in this state unless the person registers with the Department of Consumer and Business Services [(DCBS)] under ORS 697.031 [(Registration procedure)] and maintains the registration in accordance with that section."

ORS 697.005(8) defines "person" as "an individual, firm, partnership, trust, joint venture, association, limited liability company or corporation." ORS 697.005(1)(a) defines a "collection agency" as "[a] person that engages directly or indirectly in soliciting a claim for collection, or collecting or attempting to collect a claim that is owed, due

or asserted to be owed or due to another person or to a public body at the time the person solicits, collects or attempts to collect the claim."

There can be no doubt that MNS was acting as a collection agency under Oregon law when it collected the Debt from plaintiff. As such, it was required to be licensed as a collection agency with the DCBS when it did so—but it was not, nor has it ever been. *See* Declaration of Kirsten Anderson. The fact that the Oregon legislature adopted a statute requiring collection agencies to be registered in this state before attempting to collect debts from Oregon residents is material because it regulates unlawful actors like MNS who reach into this state to violate citizens' rights under federal and state law.[3] *See Scott v. J. Anthony Cambece Law Off., P.C.*, 600 F. Supp. 2d 479, 481-83 (E.D.N.Y. 2009) (complaint stated viable FDCPA claim against defendant law firm for collecting debts without debt collection license as required by applicable New York City code); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1452 (D. Nev. 1994) (granting summary judgment to the plaintiff, finding that debt collector acting as collection agency without being licensed by proper state authority as required under state law violated §§ 1692e(5), e(10), and 1692f); *Goray v. Unifund CCR Partners*, No. 06-

---

[3] As another example of materiality, if DNF were licensed as required by ORS 697.015, it would have had to post a $10,000 bond to the DCBS under ORS 607.031(2)(a), which plaintiff could then bring an action against if she obtains a judgment against MNS based on its FDCPA violations ("other misconduct") for any amount that she does not obtain by executing the judgment against MNS under ORS 607.031(2)(b). Because MNS failed to register as required, this option is not available to plaintiff.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**– Page 44 of 76**

00214 HG/LEK, 2007 WL 4260017, 2007 U.S. Dist. LEXIS 89552, at *26 (D. Haw. Dec. 4, 2007) (summary judgment granted to the plaintiff because debt collector violated § 1692e(5) by engaging in debt collection activity in Hawaii without being licensed as collection agency as required by Hawaii law).

The Court should grant summary to plaintiff on this count.

## 5. DNF is also a "debt collector"

Plaintiff alleges that DNF is a debt collector pursuant to the FDCPA under the first definition in 15 U.S.C. § 1692a(6) because it "uses any instrumentality of interstate commerce or the mails[4] in any business the principal purpose of which is the collection of any debts."

In reversing this Court's dismissal of DNF in this case, the Ninth Circuit held that "[w]e join the Third Circuit in concluding that an entity that otherwise meets the 'principal purpose' definition of debt collector cannot avoid liability under the FDCPA merely by hiring a third party to perform its debt collection activities." *McAdory*, 952 F.3d at 1090-91 (citing *Barbato v. Greystone All., LLC*, 916 F.3d 260, 261 (3d Cir.), *cert. denied sub nom. Crown Asset Mgmt. LLC v. Barbato*, 140 S. Ct. 245 (2019)). The Ninth Circuit explained that "[d]etermining a business's principal purpose thus involves comparing and prioritizing its

---

[4] There is no dispute that DNF uses instrumentalities of interstate commerce or the mails in its business. *See* Ex. 8 ¶¶1-3.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

objectives, not analyzing the means employed to achieve them. Accordingly, the relevant question in assessing a business's principal purpose is whether debt collection is incidental to the business's objectives or whether it is the business's dominant, or principal, objective." *Id.* at 1093; *see also Barbato*, 916 F.3d at 267 ("[A]n entity that has the 'collection of any debts' as its 'most important' 'aim' is a debt collector under this definition . . . [a]s long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119 (8th Cir. 2020) ("DNF does not challenge on appeal the district court's statement that its 'primary objective is to collect on debt accounts it purchased in order to turn a profit.' Therefore, on this summary judgment record, having considered the plain meaning of the statute's text, together with the structure of the FDCPA, we conclude the district court did not err in ruling as a matter of law that DNF is a 'debt collector' under § 1692a(6).").

On appeal in this case, the Ninth Circuit also found that "[h]ere, the complaint alleged that DNF's principal purpose was to buy consumer debts in order to collect on them, and that this is how DNF generated most or all of its income. Because McAdory's complaint sufficiently alleged that DNF's principal purpose was to collect debt, we

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 46 of 76

need not consider DNF's newly raised fact-based argument about its principal purpose." *McAdory*, 952 F.3d at 1093.

To avoid lengthy and invasive discovery of DNF's financial records, the parties entered into a joint stipulation of fact to satisfy plaintiff's burden to show that DNF is a debt collector under the FDCPA because its primary business purpose is the collection of debts—as DNF derives the vast majority of its revenue from debt collection. *See* Jones Decl. ¶13, Ex. 12. The stipulation states:

> Solely for purposes of resolving various discovery issues and limiting issues at summary judgment and/or trial, the parties hereby stipulate that in the years 2016 and 2017, the time period in which the conduct giving rise to Plaintiff's claim in this case occurred, approximately eighty-five percent (85%) of Defendant DNF Associates, LLC's ("DNF") revenue was derived from activity undertaken by licensed third-party collectors or third-party law firms engaged by DNF to collect debts owned by DNF.

*Id.*

The fact that, during the relevant time period when the FDCPA violations occurred here, approximately 85%[5] of DNF's revenue was derived from the collection activity of debt collectors that DNF engaged to collect debts owned by DNF is more than sufficient to find that DNF is a "debt collector" under the FDCPA as a matter of law.  Rather than

---

[5] Although unnecessary, plaintiff notes that an additional percentage of DNF's revenue is also derived from the collection of debts it purchased because a portion of the remaining 15% of DNF's revenue during the relevant period was derived from interest earned on the revenue that DNF earned from the collection of debts. *See* Ex. 4 at 26:1-15, 27:2-28:12.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 47 of 76

being "incidental" to DNF's business objectives, the collection of debts purchased by DNF in order to turn a profit on those debts is DNF's dominant and principal business objective. Pursuant to the Ninth Circuit's ruling in this case, and the parties' stipulation, the Court should grant summary judgment to plaintiff finding that DNF is a "debt collector" under the FDCPA.

**6.    DNF is vicariously liable for the actions of MNS under general principles of agency law**

On appeal, the Ninth Circuit held that "[t]he circumstances under which an entity can be a 'debt collector' logically precedes consideration of whether and when a debt collector can be held vicariously liable for the actions of another debt collector. On remand, the existing body of case law will govern the requirements of vicarious liability, and this opinion does nothing to alter that regime." *McAdory*, 952 F.3d at 1096-97 (citing *Clark,* 460 F.3d at 1173 (holding that "general principles of agency . . . form the basis of vicarious liability under the FDCPA")). The Ninth Circuit also instructed that "[i]f DNF is found to be a debt collector, the next step—not yet reached by the trial court—will be to decide whether DNF is vicariously liable according to agency principles. McAdory recognizes, and we reiterate, that vicarious liability may be addressed on remand." *Id.* at 1097.

Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 48 of 76

how the parties define their relationship. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (citing Restatement (Third) of Agency (Restatement) § 1.02); *see also United States v. Milovanovic*, 678 F.3d 713, 725 (9th Cir 2012) (finding agency relationship even though parties' agreements labeled them as independent contractors).

DNF asserts that plaintiff's "damages, if any, were caused by third parties over whom [DNF] had no control or authority." Doc. 59 ¶35. However, when the principal that engages a debt collector to collect debts on its behalf is itself a debt collector regulated by the FDCPA (which DNF is here), a plaintiff is not required to prove that the principal debt collector controlled or directed the activities of its contracted debt collector in order for the principal to be held vicariously liable. Instead, a plaintiff merely needs to prove that the FDCPA violations were committed within the scope of the debt collector agent's authority. *See, e.g., Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (disagreeing with imposition of requirement that FDCPA plaintiff show specific acts of "control" when considering principal debt collector's liability for another debt collector's actions because "'traditional vicarious liability rules' ordinarily make principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'" (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)));

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 49 of 76

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("Thus, we conclude that NTF—which itself meets the definition of 'debt collector'—may be held vicariously liable for CARC's collection activity. We believe this is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself. . . . [I]t is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf."); *Barbato*, 916 F.3d at 269 ("By way of guidance on remand, however, we offer two brief observations. First, to the extent Crown argues that the District Court was obligated to find that Crown exerted actual control over Turning Point in order to be held vicariously liable, Crown misunderstands the tenets of agency law and our precedent.").

Here, there is no doubt that MNS was acting within the scope of the authority expressly granted to it by DNF when it violated the FDCPA. DNF allowed, and in fact required, MNS to place phone calls to plaintiff in order to collect the Debt on its behalf. Ex. 6 ¶ 2; Ex. 4 at

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 50 of 76

103:17-21, 104:9-13, 136:6-15. And DNF tasked MNS with negotiating settlements and accepting payments on debts on DNF's behalf, as it did in this case. Ex. 6 ¶¶2, 9, 20; Ex. 4 at 161:24-162:13. These facts alone are enough to find that DNF is vicariously liable for MNS's FDCPA violations based on federal common law agency principles.

However, even assuming that plaintiff is required to prove that DNF exercised a specific level of control over MNS's collection of debt owed to DNF, plaintiff does not need to prove "actual control over the specific activity alleged to violate the Act." *Janetos*, 825 F.3d at 326 (citing *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994)). Nor does plaintiff need to show that DNF actually exercised control over MNS's activities—only that DNF had the *right* to control aspects of MNS's collection of debts that DNF assigned to MNS. *See Meyer*, 537 U.S. at 285-86 (explaining that principal-agent relationship requires that principal either control "*or [have] the right to direct or control*" agent (emphasis added)); Restatement § 1.01 cmt. c.7 (A "person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment."); *id.* ("A principal's failure to exercise the right of control does not eliminate it.").

Here the record makes clear that DNF assigned the Debt to MNS for collection, allowing MNS to directly collect the Debt from plaintiff in

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

the first instance. Ex. 8 ¶10. To facilitate MNS's collection of the Debt, DNF provided MNS with information about the Debt and plaintiff—including plaintiff's Social Security number, last known telephone number, address, and email address. Ex. 4 at 104:14-105-11, 106:3-10; Ex. 8 ¶¶18-20.

The Services Agreement between DNF and MNS expressly authorized, required, and restricted actions MNS could take while collecting the Debt. DNF expected MNS "to collect as much money as possible in regards to the debt that is owed and the balance that is owed on the account." Ex. 6 ¶2; Ex. 4 at 135:12-14.  Again, the Services Agreement anticipated, in fact required, MNS to place phone calls to plaintiff in order to collect the Debt on its behalf. Ex. 6 ¶2; Ex. 4 at 103:17-21, 104:9-13, 136:6-15. DNF also required MNS to use skip tracing to track down consumers' location information "wherever necessary." Ex. 6 ¶2; Ex. 4 at 136:16-24.

DNF restricted MNS from taking any "legal action" to collect debts on its behalf without express written approval from DNF. Ex. 6 ¶¶2, 19. And DNF never allowed MNS to take any legal action when collecting debts on its behalf.  Ex. 4 at 80:4-13, 137:22-24. DNF authorized MNS to negotiate settlement of DNF's accounts with consumers, including plaintiff. Ex. 4 at 161:11-23; Ex. E at 2. However, MNS's settlement ability was limited by the parameters set by DNF. Ex.

6 ¶20; Ex. 4 at 161:24-162:13. If MNS wished to settle a debt for less than the floor set by the Services Agreement it had to "reach out to DNF's outsource team and request a lower settlement amount based on the consumer's situation." Ex. 4 at 44:11-45:5.

DNF also had the right to recall a debt from MNS at any time it chose. Ex. 6 ¶18. DNF also retained the right to audit the collection actions of MNS "at any time during the duration of this agreement." *Id.* ¶11. Such an audit includes a review of "compliance with applicable regulations and statutes." *Id.* DNF conducted at least one such audit in 2016, prior to MNS's actions in violation of the FDCPA in this case. Ex. 4 at 144:24-152:14; Jones Decl. ¶14, Ex. 13. *Inter alia*, this audit found that "[a]ccount review shows accounts are being status [sic] correctly in accordance with DNF requirementws [sic]." Ex. 13 at 4 (120:D). This shows that DNF did indeed have requirements it provided to MNS regarding the handling of debts that DNF assigned to MNS for collection. Given these incontestable facts, no reasonable juror could find that DNF did not have sufficient control, or the right to control, MNS's collection of debts owed to DNF.

Moreover, the Ninth Circuit has explained that there are multiple avenues for vicarious liability which form "the bedrock theories of agency: actual authority, apparent authority, ratification, and employment (respondeat superior)." *Jones v. Royal Admin. Servs.*, 887

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 53 of 76

F.3d 443, 448-49 (9th Cir. 2018). The facts set forth below conclusively demonstrate an agency relationship between DNF and MNS under the theories of implied actual authority, apparent authority, and ratification.

### 6.1. MNS had implied actual authority to act as DNF's agent

A principal may be liable for its agent's actions when the agent has either express or implied actual authority to act on the principal's behalf. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (citing Restatement § 2.01 intro. note) "Implied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." *Id.* (internal quotation marks and citation omitted).

In *Ditty v. CheckRite*, the court found that the debt collection law firm acted with implied authority of the creditor because the creditor and collection firm "entered into an oral contract which authorized the law firm to collect [the creditor's] delinquent accounts," "[u]nder the terms of the contract, [the creditor] and the firm shared in the proceeds of such collection efforts," the creditor "knew of the collection methods employed by the firm," and the creditor "authorized [the firm] to do its collection work and then knowingly stood by while the firm utilized the 'covenant not to sue' scheme," 973 F. Supp. 1320, 1334 (D. Utah 1997). Therefore, "[b]y its acquiescence, [the creditor] impliedly authorized the

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 54 of 76

collection practices of [the collection firm] and thus is liable for any violations of law caused by the firm's use of those practices." *Id*.

The undisputed facts show that, like the debt collector in *Ditty*, MNS had implied actual authority to act on DNF's behalf. DNF contracted with MNS for the collection of DNF's accounts. *See* Ex. 6. Pursuant to the Services Agreement the parties shared in the profits from those collections. Ex. 6 ¶12; Ex. 4 at 151:22-25. In addition to reaching out to debtors through phone calls and mail, to collect debts on DNF's behalf, MNS also had the authority to accept payments and to negotiate settlement terms with consumers that owed debts to DNF. Ex. 6 ¶¶2, 9, 20.

DNF was also aware that MNS's training materials for their employees included a phone message script remarkably similar to the unlawful phone message left by MNS in this case.

> Hello, this message is intended for (Consumer Name). I am calling today to confirm your address and place of employment. I was forwarded documentation today that verifies your name and social security number in regards to a process for review. Please be advised we are in the process of issuing a required notice. So, before this notice is issued out, I did want to provide you with a courtesy call and give you the opportunity to provide input or ask any questions you may have. Please contact an advisor directly at 877-XXX-XXXX. Please reference your file number XXXXXXX.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jones Decl. ¶15, Ex. 14 at 14; Ex. 13 at 3 (107:D). Analogous to the phone message that MNS left for plaintiff, this message script fails to provide the information required by 15 U.S.C. §§ 1692d(6) and 1692e(11).

DNF also conducted an audit of MNS in November 2016. Ex. 13. The audit was conducted by David Maczka, the Chief Compliance Officer for DNF. *Id*. at 1 (2:D); Ex. 4 at 9:4. The audit found:

> Overal [sic] review of call quality was significantly disappointing. There are few collectors to chose [sic] from, but all calls had a poor tone and general sense of disconnect. The prelegal talk off [sic] being used is aggressive and will need to be reviewed. [MNS] does have authorization to work SOME inventory in a pre-legal fashion, but initial review suggests risk.

Ex. 13 at 1 (8:B). The audit also found that "[t]here is much room for improvement with consumer experience and compliance. Simple guidelines are not being followed." *Id*. at 1 (12:B).

Despite its knowledge of MNS's aggressive, risky, and unlawful collection practices in 2016, DNF continued to allow MNS to collect its debts, over the phone and through the mail, to negotiate settlements and collect payments on its behalf. DNF merely stood by and collected its profits from MNS's collections while MNS engaged in unlawful collection practices, including MNS's conduct as to plaintiff in 2017. DNF's only real directive to MNS was to utilize "collection procedures in the attempt to achieve maximum recovery of debts." Ex. 6 ¶2. Given DNF's broad delegation of authority to MNS and its acquiescence to

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

MNS's unlawful procedures, DNF "impliedly authorized the collection practices of [MNS] and thus [DNF] is liable for any violations of law caused by [MNS's] use of those practices." *Ditty*, 973 F. Supp. at 1334.

### 6.2.    MNS had apparent authority to act as DNF's agent

"Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." Restatement § 3.03.

"The principal's manifestations giving rise to apparent authority may consist of . . . directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area in which the agent acts and negotiates." *Hawaiian Paradise,* 414 F.2d at 756.

Recently, in *Salyers*, the Ninth Circuit found apparent authority to exist as between an employer (Providence) and an insurer (MetLife) where the employer handled "nearly all the administrative

responsibilities" for managing an employee's submitted claim for insurance eligibility. 871 F.3d at 940. The court held that "MetLife played no part in collecting it from plan participants. A plan participant would have reasonably believed that Providence did not collect evidence of insurability of its own accord but on MetLife's behalf. Providence's direct interaction with plan participants, coupled with MetLife's failure to engage with Salyers about evidence of insurability, suggested that Providence had apparent authority on the collection of evidence of insurability." *Id.* at 941 (citing Restatement § 3.03) ("A principal's inaction creates apparent authority when it provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions.").

Here, like in *Saylers*, plaintiff reasonably believed MNS to be collecting on behalf of DNF because she knew that DNF was the current owner of the Debt and that she owed money to DNF—not MNS. *See* Ex. 2 at 24:9-20, 25:3-8, 25:18-20, 26:2-5, 26:18-24, 47:18-21, 48:3-6, 66:19-67:4. The letter that plaintiff received from Kay Jewelers informed her that the Debt was sold to DNF. Ex. B; Ex. 2 at 19:18-20. DNF is aware that, when it purchases a charged off debt, consumers like plaintiff may be notified that DNF is the current creditor to whom the debts were sold. Ex. 4 at 156:2-12.  The letter plaintiff received from First Choice, DNF's first debt collector, also informed plaintiff that DNF was the current

creditor of the Debt. Ex. C. And DNF acknowledges that its collection agents, like First Choice and MNS, would and should identify DNF as the current creditor it was collecting for when contacting consumers on DNF's behalf, as MNS did in plaintiff' phone calls in this case, and in its initial written communication with plaintiff. Ex. 4 at 91:10-93-3, 110:6-21; Ex. 2 at 20:12-20, 43:9-12, 43:17-23, 66:19-67:4; Ex. E at 2. Moreover, identifying the current creditor for whom the debt collector is collecting is required under the FDCPA. *See* 15 U.S.C. § 1692g(a)(2).

In addition to authorizing MNS to collect debts and to communicate with consumers like plaintiff on its behalf, using its name, DNF also granted permission to MNS to negotiate settlements and to enter into settlement agreements with consumers on its behalf, which are binding on DNF. Indeed, such permission is the *sine qua non* of the parties' agreement. *See* Ex. 6 ¶¶2, 9, 20; Ex. 4 at 161:15-18. MNS's settlement agreements also listed DNF as the current creditor to whom the debts were owed, and DNF was aware of MNS's form settlement agreements. Ex. 14 at 14. When plaintiff entered into the settlement agreement here, she reasonably (and correctly) believed that the settlement agreement was entered into on behalf of DNF, would bind DNF, and would satisfy the Debt as to DNF, and that MNS would remit some or all of the settlement funds it collected on DNF's behalf to DNF. Ex. E; Ex. 2 at 42:23-43:16, 46:306, 51:11-18, 55:16-23.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 59 of 76

DNF's grant of authority to MNS to communicate with plaintiff to collect the Debt from her, to use DNF's name during the collection process, and to negotiate and obtain a settlement of the Debt, which would be binding on DNF, caused plaintiff to reasonably (and correctly) believe that MNS's communications and collection activities at issue were performed on behalf of DNF, and with DNF's authority. Or put differently, "[MNS's] direct interaction with [plaintiff], coupled with [DNF's] failure to engage with [plaintiff] about [the Debt], suggested that [MNS] had apparent authority on the collection of the [Debt]." *Salyers*, 871 F.3d at 941. Based on these incontrovertible facts, no reasonable juror could find that MNS was not DNF's agent under an apparent agency theory when it committed the FDCPA violations within the scope of its apparent agency.

### 6.3.    DNF ratified MNS's unlawful collection practices

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement § 4.01. "As an act, ratification is the principal's assent (or conduct that justifies a reasonable assumption of assent) to be bound by the prior action of another person or entity.  As a set of effects, ratification creates consequences of actual authority, including, in some circumstances, creating an agency relationship when none existed before." *Henderson*, 918 F.3d at 1073 (citation omitted). There

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 60 of 76

are two ways to ratify a third party's acts: (1) by a "knowing acceptance of a benefit," or (2) through a form of "willful ignorance." *Id.* at 1078.

### 6.3.1. DNF knowingly benefited from MNS's unlawful collection practices

To prove the "knowing acceptance of the benefit" form of ratification, plaintiff must establish "'an objectively or externally observable indication . . . that the principal [DNF] has exercised choice and has consented' to the acts of the purported agent [MNS]." *Id.* at 1073 (quoting Restatement § 4.01 cmt. d). This means that DNF must have "'knowledge of material facts,' also described as 'actual knowledge.'" (quoting Restatement § 4.06). *Id.* "'The fact that the principal had knowledge may be inferred' by circumstantial evidence." *Id.* at 1075 (quoting Restatement § 4.06 cmt. b).

In *Henderson*, the court found that the student loan lender had actual knowledge of material facts that some of its debt collectors used an autodialer in violation of the Telephone Consumer Protection Act (TCPA). *Id.* Proof of the lender's knowledge included an audit it conducted on its debt collectors' practices, and the lender's "general understanding of the debt collection industry." *Id.* Despite this knowledge, the lender "made no effort to end its relationship with any of these debt collectors or to ensure future TCPA compliance. Instead, it continued to accept the benefits of the collectors' conduct." *Id.* at 1076. Because the debt collectors were likely to draw the inference that the

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 61 of 76

lender's "silence manifested its assent to these practices," the Ninth Circuit reversed the district court's grant of summary judgment for the lender, finding that the "evidence suggests that [the lender] consented—with material knowledge—to the debt collectors' likely unlawful calling practices." *Id*.

Here, DNF was aware of MNS's phone message scripts, which did not comply with the FDCPA. Ex. 14 at 14; Ex. 13 at 3 (107:D). And pursuant to its 2016 audit of MNS, DNF was aware that the language being used in MNS's collection communications was "aggressive and will need to be reviewed" and MNS's practice presented a "risk." DNF believed that MNS needed to improve its "compliance" and knew that "[s]imple guidelines are not being followed" by MNS. Ex. 13 at 1 (8:B, 12:B).

Moreover, "as sophisticated businesses operating in a regulatory regime, defendants are properly charged with knowledge of the statute that applies to their behavior." *United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502, 513 (4th Cir. 2005); *accord Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1548 (9th Cir. 1989). DNF is in the business of debt collection and does indeed have knowledge of the FDCPA's requirements. Ex. 4 at 88:25-89:11, 117:5-119:12.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

But DNF did nothing to ameliorate MNS's unlawful conduct, or to end its relationship with MNS, even after it had actual knowledge of MNS's "risky" and unlawful collection practices when collecting debts on DNF's behalf. *Id.* at 118:23-119:12. DNF entrusted MNS with over 13,000 accounts between May 1, 2016 and May 1, 2017 alone—including the Debt at issue here. Ex. 5 ¶8. DNF was content to continue making money from MNS's unlawful collections. For example, DNF collected 70% of the money that MNS collected from plaintiff. Ex. 10. Given DNF's inaction, MNS was likely to draw the inference that DNF's silence manifested its assent to MNS's illegal practices.

The undisputed "evidence suggests that [DNF] consented—with material knowledge—to" MNS's likely unlawful collection practices. *Henderson*, 918 F.3d at 1076; *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 2006) (holding that operator of swap meet cannot escape vicarious liability for sale of counterfeit music recordings where they gained financial benefit therefrom, even though the operators themselves did not engage in sales). There are no genuine issues of material fact remaining as to DNF's ratification of MNS's FDCPA violations through DNF's "knowing acceptance of the benefits" of MNS's unlawful collection.

### 6.3.2. DNF's willful ignorance

The facts clearly indicate that DNF had actual knowledge of MNS's unlawful collection practices. However, "[e]ven if the facts are insufficient to infer actual knowledge by [DNF] that [MNS] [was] violating the [FDCPA], [DNF] at a minimum 'had knowledge of facts that would have led a reasonable person to investigate further.'" *Henderson*, 918 F.3d at 1076 (quoting Restatement § 4.06 cmt. d). This form of ratification is known as "willful ignorance."

In *Henderson*, the lender's "audit findings combined with its knowledge about common practices in the industry should have alerted [the lender] that it needed to investigate further." *Id.* But "[i]nstead, [the lender] continued to accept the benefits of the debt collectors' violations and to remain silent about the collectors' legal obligations under the TCPA." *Id.* The lender set up the collection structure between itself, its servicer, and its debt collectors "to remain willfully ignorant and avoid liability." *Id.*  The lender's directions to its servicer and its debt collectors "were general and open-ended" and it "did not set performance or operational standards." *Id.*   Nor did the lender "have policies or procedures in place to ensure their debt collectors' calling practices complied with the TCPA." *Id.*

Here the facts regarding DNF's willful ignorance are even more clear. DNF acknowledges that it employs a compliance officer to keep

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 64 of 76

DNF updated on the FDCPA. Ex. 4 at 29:13-21, 72:13-17. Despite its knowledge of the FDCPA, DNF testified that it intentionally gives no direction, nor provides any expectations, to its debt collectors about how they should go about collecting the debts owed to DNF. *Id*. at 100:15-25. And DNF specifically admits that it provided no guidance to MNS, or any standards that MNS should comply with, when it was collecting the debts on DNF's behalf. Ex. 8 ¶¶11-13; Ex. 4 at 115:20-24.  In fact, DNF has no policies or procedures regarding FDCPA compliance to provide MNS or any of its other debt collector agents. Ex. 4 at 116:10-17. DNF's only expectations for its collectors are to "collect as much money as possible," and to generally "abide by the laws." *Id*. at 135:8-14, 114:14-19.

DNF only sporadically conducts audits of its debt collectors. *Id*. at 146:7-12. And even when DNF did conduct its single audit of MNS in 2016 those findings indicated that MNS's collection practices were "aggressive" and "suggested risk," and that "simple guidelines are not being followed," yet it chose to take no action and provide no ameliorative guidance. Ex. 13 at 1. Even further, DNF's 2016 audit and the script it obtained from MNS indicated that, consistent with the phone message MNS left for plaintiff in this case, MNS's phone messages violated the FDCPA. *Id*. at 3 (107:D); Ex. 14 at 14.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

DNF's knowledge of the FDCPA, along with its specific knowledge of the findings of its 2016 audit of MNS, clearly "should have alerted [DNF] that it needed to investigate [MNS] further," but instead DNF "continued to accept the benefits of [MNS's] violations and to remain silent about the [MNS's] legal obligations under the [FDCPA]." *Henderson*, 918 F.3d at 1076. As in *Henderson*, the record indicates that DNF set up the collection structure between itself and MNS "to remain willfully ignorant and avoid liability." *Id.* DNF's directions to MNS "were general and open-ended" and DNF did not "set performance or operational standards" for MNS. *Id.* Nor did MNS "have policies or procedures in place to ensure" that MNS's debt collection practices complied with the FDCPA. *Id.* Given these admissions, no reasonable jury could find that DNF did not remain willfully ignorant, thereby ratifying MNS's debt collection practices in violation of the FDPA.

## 7.    DNF's "affirmative defenses"

As a "strict liability" statute, the FDCPA only "excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." *McCollough*, 637 F.3d at 948. DNF does not assert any bona fide error defense. Instead, DNF asserts six "affirmative defenses," all of which are unsupported by any evidence. *See* Doc. 59 ¶¶30-35.

### 7.1.   Failure to state a claim

"The majority of courts do not permit a failure to state a claim to be asserted as an affirmative defense." *Sims v. Peak Legal Advocates*, No. SACV 18-1199 JVS (KESx), 2018 WL 8731538, 2018 U.S. Dist. LEXIS 196245, at *3-4 (C.D. Cal. Nov. 16, 2018) (collecting cases); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). If DNF "held a good faith belief that plaintiff had failed to state a claim in [her] complaint, [it] could have and should have moved to dismiss any such claim pursuant to Rule 12(b)(6)." *Hernandez v. Kokor*, No. 1:16-cv-00716-DAD-MJS (PC), 017 WL 4004165, 2017 U.S. Dist. LEXIS 147582, at *5 (E.D. Cal. Sept. 12, 2017). In any event, plaintiff clearly states a plausible claim under the FDCPA.

### 7.2.   Article III standing

An alleged "[l]ack of standing is not an affirmative defense; it is a jurisdictional requirement." *United States v. Acad. Mortg. Corp.*, No. 16-cv-02120-EMC, 2020 U.S. Dist. LEXIS 226154, at *11 (N.D. Cal. Dec. 2, 2020). To establish constitutional standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and

(3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000).

As clarified by the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), "a plaintiff may establish a concrete injury-in-fact in one of three ways: (i) by alleging facts to establish statutory violations of the type that are sufficient without the need to allege additional harm; (ii) by alleging facts to establish that the alleged statutory violations created a material risk of harm; or (iii) by alleging facts to establish that the alleged violations caused actual (tangible or intangible) harm." *Byrne v. Or. One, Inc.*, No. 3:16-cv-01910-SB, 2017 WL 3568412, 2017 U.S. Dist. LEXIS 132538, at *15 (D. Or. July 18, 2017). "[S]uccessful post-*Spokeo* standing challenges to FDCPA claims are a small minority." *Id.* at *22.

Here, plaintiff has suffered a concrete injury-in-fact in not just one, but all three ways. MNS's failure to include the information required by § 1692d(6) and § 1692e(11), and the overshadowing of the validation notice required by § 1692g, in the phone message, each of these is "not just a procedural violation, but is a substantive violation because Congress has determined that consumers like [plaintiff] have a substantive right to receive the information. Accordingly, [plaintiff] has

satisfied *Spokeo*'s standing requirements with [her] alleged statutory violations, even in the absence of alleging additional harm." *Id*. at *26.

As to MNS's other violations, the FDCPA grants recipients of debt collection communications "a right to be free from abusive collection practices," and because MNS violated that right, plaintiff "need not allege any additional harm." *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, 2016 U.S. Dist. LEXIS 108386, at *40 (M.D. Fla. Aug. 16, 2016); *see also Martinez v. Integrated Cap. Recovery, LLC*, No. 20-CV-00582-AWI-SAB, 2021 U.S. Dist. LEXIS 6747, at *7 (E.D. Cal. Jan. 12, 2021) (recognizing that "[s]ince the Supreme Court's 2016 decision in *Spokeo Inc. v. Robins*, a majority of courts have found that Congress elevated violations of the FDCPA— including, specifically, violations of Sections 1692e and 1692f—to the status of legally cognizable injury sufficient to confer standing, with no additional showing of harm").

But MNS's FDCPA violations also created multiple material risks of harm. *Inter alia*, MNS's failure to identify itself as required in the phone message created a material risk that plaintiff "would pay someone who did not legitimately own the debt." *Byrne*, 2017 U.S. Dist. LEXIS 132538, at *28; *see also Driesen*, 2019 U.S. Dist. LEXIS 9795, at *9 (defendant's "violation of 15 U.S.C. § 1692e(11)—again, its failure to affirmatively inform [the plaintiff] that it was attempting to collect a

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 69 of 76

debt and that any information she provided could be used against her—created a risk that [the plaintiff] might volunteer information to her detriment during subsequent interactions with [the defendant].").

Moreover, the misleading statements and the false sense of urgency created by the phone message created a material risk that plaintiff would allocate funds she required for her essential needs to pay or settle the Debt. *See, e.g.*, *Kaiser v. Cascade Cap., LLC*, No. 3:16-cv-00744-AC, 2018 WL 1521892, 2018 U.S. Dist. LEXIS 51845, at *11-12 (D. Or. Mar. 28, 2018) (defendant's misleading communications concerning enforceability of debt created substantial risk that the plaintiff may have paid debt believing she could have been sued, and "[t]hese are precisely the types of risks that flow from the misrepresentation of a consumer's legal rights that Congress sought to address in the FDCPA" (internal quotation marks and citations omitted)).

Beyond material risks of harm, MNS's unlawful conduct caused plaintiff actual tangible and intangible harm. As a result of MNS's abusive, deceptive, and unfair collection practices, plaintiff paid MNS and DNF money that she could not afford at the time. McAdory Decl. ¶15. Because MNS debited her account earlier than agreed, plaintiff had to borrow money from her mother to ensure that she could pay for her needs. *Id.* ¶¶15-16; Ex. 2 at 53:16-54:4; Ex. G at 4; Ex. H. MNS's illegal conduct also caused plaintiff significant emotional distress. *See* Doc. 55

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

¶25; *see also* Ex. 2 at 37:2-30:16, 77:4-83:23 (the plaintiff's deposition testimony describing her emotional distress damages caused by MNS's FDCPA violations).

There is no doubt that the FDCPA provides compensation for a plaintiff's emotional distress damages—even if supported only by the plaintiff's own testimony. *McCollough*, 637 F.3d at 957 (upholding $250,000 award to plaintiff for emotional distress damages under FDCPA); *Nelson v. Equifax Info. Servs., LLC,* 522 F. Supp. 2d 1222, 1235 (C.D. Cal. 2007) (pursuant to Ninth Circuit precedent, the plaintiff's testimony alone could sufficiently establish emotional distress damages under FDCPA); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1039-41 (9th Cir. 2003) (upholding significant award of emotional distress damages based solely on the plaintiff's testimony). Although the jury will ultimately decide an appropriate amount to compensate plaintiff for her emotional distress damages caused by MNS's FDCPA violations, these actual damages alone satisfy Article III's concrete injury-in-fact requirement. *Kaiser*, 2018 U.S. Dist. LEXIS 51845, at *10-11 ("Allegations that an allegedly unlawful action caused an individual to experience anxiety can be sufficient to establish injury-in-fact."); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010).

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff suffered a concrete injury-in-fact, that is traceable to MNS's FDCPA violation, and that is likely to be redressed by a favorable decision. Therefore, plaintiff has standing to obtain relief in this Court.

### 7.3.    Statute of limitations

DNF's answer is devoid of any facts supporting its alleged statute of limitations defense—because there are no such facts. An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The earliest occurring conduct that plaintiff alleges violated the FDCPA is when MNS left its phone message for plaintiff on February 24, 2017. Plaintiff filed her initial complaint in this case on May 17, 2017—less than three months after MNS left the phone message. Doc. 1. Because there is an absence of evidence to support DNF's statute of limitations defense, the Court should grant summary judgment to plaintiff on this issue.

### 7.4.    DNF's status as a "debt collector"

DNF's "affirmative defense" asserting that it is not a debt collector as defined by the FDCPA is not an affirmative defense; it is an element that plaintiff must prove in order for DNF to be held liable under the statute. *See Zivkovic*, 302 F.3d at 1088. In any event, as discussed *supra*, there is no genuine issue of material fact that DNF is a debt collector under the FDCPA.

### 7.5.   Plaintiff's or third parties' fault

It is unclear exactly what DNF means to assert in its fifth and six alleged affirmative defenses, but these "defenses" appear to be grounded in an alleged failure by plaintiff to mitigate her damages or in the concept of comparative fault—neither of which is applicable to an FDCPA claim. *See, e.g.*, *Scott v. Fed. Bond & Collection Serv.*, No. 10-CV-02825-LHK, 2011 WL 176846, 2011 U.S. Dist. LEXIS 5278, at *22-23 (N.D. Cal. Jan. 19, 2011) (striking defendants' "comparative negligence," "negligence of third parties," and "failure to use reasonable care" defenses because these defenses "are applicable in negligence and intentional tort actions and would appear to have no application to Plaintiff's claims under the FDCPA"); *Madison v. Goldsmith & Hull*, No. 5:13-cv-01655 EJD, 2013 WL 5769979, 2013 U.S. Dist. LEXIS 153168, at *6 (N.D. Cal. Oct. 24, 2013) (recognizing that "contribution" and "mitigation of damages" defenses are inapplicable to FDCPA claim).

To the extent DNF is alleging that plaintiff cannot recover because she owed the Debt, or that she somehow fraudulently incurred the Debt, these defenses are equally inapplicable. *See Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2007 WL 806486, 2007 U.S. Dist. LEXIS 21313, at *16-17 (N.D. Cal. Mar. 15, 2007) (no fraud or unclean hands exception to FDCPA even if consumer never intended to repay loan); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 73 of 76

[FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.").

To the extent that DNF's sixth "affirmative defense" asserts that DNF is not vicariously liable for MNS's FDCPA violations, because MNS was not acting as its agent when it engaged in the unlawful conduct, this is not an affirmative defense, but rather an issue that plaintiff must establish. As set forth *supra*, plaintiff has done so.

## CONCLUSION

For the forgoing reasons, the Court should grant summary judgment for plaintiff on each count of her FDCPA claim, on DNF's is vicarious liability under federal common law agency principles, and on DNF's affirmative defenses.

January 29, 2021.

RESPECTFULLY FILED BY,

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Kelly D. Jones, Attorney at Law
He819 SE Morrison St., Suite 255
Portland, OR 97214
Tel: (503) 847-4329
Fax: (503) 715-0524
Email: kellydonovanjones@gmail.com

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 74 of 76

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), as extended by the Court to no more than 15,000 words (*see* Doc. 66), because it contains 14,979 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

January 29, 2021.

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Kelly D. Jones, Attorney at Law
819 SE Morrison St., Suite 255
Portland, OR 97214
Tel: (503) 847-4329
Fax: (503) 715-0524
kellydonovanjones@gmail.com

*Lead Trial Attorney for Plaintiff*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 29, 2021, a true copy of the foregoing document will be served on the following parties via the Court's ECF system:

Brenden H. Little
Lippes, Mathias, Wexler, Friedman, LLP
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
blittle@lippes.com

Jordan M. New
Law Office of Jordan Michael New, PC
1001 SW Fifth Avenue
Suite 1100, #483
Portland, Oregon 97204
jordan@newlawpdx.com

*Attorneys for Defendant DNF*

January 29, 2021.

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Kelly D. Jones, Attorney at Law
819 SE Morrison St., Suite 255
Portland, OR 97214
Tel: (503) 847-4329
Fax: (503) 715-0524
kellydonovanjones@gmail.com

*Lead Trial Attorney for Plaintiff*

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
– Page 76 of 76